Willie PEACOCK et al., Appellants,

v.

The CITY OF GREENWOOD, Mississippi, Appellee.

No. 21655.

United States Court of Appeals
Fifth Circuit.

June 22, 1965.

Jack Peebles, Bruce Waltzer, Smith, Waltzer, Jones & Peebles, New Orleans, La., for appellants.

Arnold F. Gwin, Hardy Lott, Lott & Sanders, Greenwood, Miss., for appellee.

Before WOODBURY,* WISDOM, and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge:

This cause arises under the removal statute, 28 U.S.C.A. § 1443. The appeal is from an order of the District Court sustaining the city's motion to remand fourteen criminal cases to the city police court.

The petitions for removal alleged that appellants were arrested in Greenwood, Mississippi, and charged with obstructing public streets in violation of § 2296.5, Mississippi Code of 1942.[1] Removal jurisdiction was predicated on both paragraphs (1) and (2) of § 1443.[2] It was

---

* Of the First Circuit, sitting by designation.

1. In pertinent part:
    "1. It shall be unlawful for any person or persons to wilfully obstruct the free, convenient and normal use of any public sidewalk, street, highway, alley, road, or other passageway by impeding, hindering, stifling, retarding or restraining traffic or passage thereon, and any person or persons violating the provisions of this act shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not more than five hundred dollars ($500.00) or by confinement in the county jail not exceeding six (6) months, or by both such fine and imprisonment." Miss.Laws 1960, Ch. 244.

2. "Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

alleged that appellants were members of the Student Non-Violent Coordinating Committee, an organization affiliated with the Conference of Federated Organizations, both civil rights groups; and that at the time of the arrests, they were engaged in a voter registration drive assisting Negroes to register and secure the right to vote as guaranteed by the Federal Constitution, and the Civil Rights Act of 1960, 42 U.S.C.A. § 1971 et seq. Appellants further alleged that the Mississippi statute in question was vague, indefinite, and unconstitutional, both on its face and as applied, and that their arrests and trial under it would prevent them from exercising their First and Fourteenth Amendment rights to free speech, assembly, and petition. Finally, it was said that appellants were being denied equal protection of the laws and that the statute was being enforced against them as part and parcel of a policy of racial segregation maintained by the State of Mississippi and the City of Greenwood.

Upon motion by the city of Greenwood, the District Court remanded each case on the ground that § 1443 afforded no jurisdictional basis for removal. With respect to jurisdiction claimed under paragraph (1) of § 1443, the District Court proceeded on the theory that the Supreme Court in several cases[3] ending with Com. of Kentucky v. Powers, 1906, 201 U.S. 1, 26 S.Ct. 387, 50 L.Ed. 633, restricted that paragraph to situations where the state constitution or statutes, as disinguished from corrupt and illegal acts of state officials, denied or prevented enforcement of the equal rights of the accused. In effect, these decisions of the Supreme Court were construed as limiting § 1443(1) to cases where the denial or inability to enforce equal rights appeared on the face of the state constitution or statutes, rather than in their application.

Following the decision of the District Court,[4] we decided Rachel v. State of Georgia, 5 Cir., 1965, 342 F.2d 336. The Rachel case disposes of the two questions under § 1443(1) raised by this appeal: (1) whether the brief allegations of the removal petitions were sufficient as a matter of pleading to allege a cause for removal under § 1443(1); and (2) whether § 1443(1) allows removal where a state statute, though valid and non-discriminatory on its face, is applied in violation of some equal right of the accused.[5] The additional question presented by this appeal is whether paragraph (2) of § 1443 also affords a basis for removal under the facts of this case.

---

"(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

"(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law."

3. Strauder v. West Virginia, 1879, 100 U.S. 303, 25 L.Ed. 664; Virginia v. Rives, 1870, 100 U.S. 313, 25 L.Ed. 667; Neal v. Delaware, 1881, 103 U.S. 370, 26 L. Ed. 567; Bush v. Kentucky, 1883, 107 U.S. 110, 1 S.Ct. 625, 27 L.Ed. 354; Gibson v. Mississippi, 1896, 162 U.S. 565, 16 S.Ct. 904, 40 L.Ed. 1075.

4. See also City of Clarksdale, Miss. v. Gertge, N.D.Miss.1964, 237 F.Supp. 213,

now pending on appeal in this court as case No. 22,323.

5. The District Court did not reach the question of whether the statute was unconstitutional by reason of being vague and indefinite. Neither do we for it goes without saying that prosecution under such a statute, standing alone and without discriminatory overtones, would not show a denial or inability to enforce equal civil rights within the terms of either paragraph of § 1443.

The criticism by the District Court based on verification of the petitions by counsel instead of petitioners, and of the failure to file state court pleadings, process and orders in the federal court are not regarded as questions presented since these criticisms were no part of the basis for remand.

## I.

■ From the Rachel decision and its application of the rules of federal notice type pleading to removal petitions, it is plain that the petitions here are adequate as a matter of pleading to set forth the contention that Mississippi Code § 2296.5 is being applied so as to deny appellants their rights under the equal protection clause of the Fourteenth Amendment. Appellants allege that they are being prosecuted for obstructing public streets in violation of Mississippi Code § 2296.5, that they are being denied equal protection of the law, and that the Mississippi statute in this instance is being enforced as part of a policy of racial segregation maintained by the state and city. It is a fair inference that they contend that the statute is being invoked discriminatorily to harass and impede appellants in their efforts to assist Negroes in registering to vote. It may be on remand that proof of these allegations will be insufficient. However, if these allegations are true, a denial of equal protection of the law would be established.

Under the precedent of Rachel and the authorities therein cited having to do with notice type pleading, we hold that the removal petitions are adequate at this stage of the proceeding to set forth a claim for removal based on the proposition that appellants are denied or cannot enforce in the courts of Mississippi their rights under the equal protection clause of the Fourteenth Amendment by virtue of the discriminatory application of Mississippi Code § 2296.5. We proceed therefore to consider whether such a claim for removal is included within the scope of § 1443(1).

## II.

■ It is settled that the equal protection clause of the Fourteenth Amendment constitutes a "law providing for the equal civil rights of citizens of the United States" within the meaning of § 1443(1). Strauder v. West Virginia, 1879, 100 U.S. 303, 25 L.Ed. 664 (by implication); Steele v. Superior Court, 9 Cir., 1948, 164 F.2d 781.

[3, 4] The court in Steele suggested, and it is our view, that not every violation of the equal protection clause will justify removal, but only those violations involving discrimination based on race. This limitation comports with the historic purpose of § 1443. Appellants also allege deprivation of rights under the due process clause of the Fourteenth Amendment and under the First Amendment as incorporated therein. We hold, however, that the due process clause is not a law providing for *equal* rights within the contemplation of the removal statute. This view accords with the holding in Steele and in People of State of New York v. Galamison, 2 Cir., 1965, 342 F.2d 255, cert. den., 85 S.Ct. 1342, where the court said:

> "When the removal statute speaks of 'any law providing for equal rights,' it refers to those laws that are couched in terms of equality, such as the historic and the recent equal rights statutes, as distinguished from laws, of which the due process clause and 42 U.S.C. § 1983 are sufficient examples, that confer equal rights in the sense, vital to our way of life, of bestowing them upon all."

The removal statute contemplates those cases that go beyond a mere claim of due process violation; they must focus on racial discrimination in the context of denial of equal protection of the laws. The allegation of appellants that the Mississippi statute is being employed to thwart their efforts to assist Negroes to register to vote is sufficient to meet this test. It is a claimed denial of an equal civil right based on race.

The difficult question is whether removal jurisdiction under § 1443(1) is limited to situations where the denial or inability to enforce rights under the equal protection clause appears from the face of the state constitution or statutes, or whether that section also encompasses cases where the deprivation of equal rights arises from the application of an otherwise valid statute. On this question also, however, we feel that the City

of Greenwood is foreclosed by the reach of Rachel v. State of Georgia supra.

Rachel involved prosecutions of sit-in demonstrators under the Georgia anti-trespass statute, Ga. Code § 26–3005. The Georgia statute, like the Mississippi statute here, was non-discriminatory on its face, and only through application could it operate to deny equal civil rights. The law providing for equal civil rights was the Civil Rights Act of 1964, as construed by the Supreme Court in Hamm v. City of Rock Hill, 1964, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300, to retroactively bar state prosecutions for peaceful sit-in demonstrations. The removal petitions in that case were construed as alleging, in effect, that Ga. Code § 26–3005 was being applied to appellants in violation of the Civil Rights Act of 1964 (and therefore in violation of the Supremacy Clause). We held that as thus construed the removal petitions stated a good claim for removal under § 1443(1). It was as if the Civil Rights Act had placed a gloss on the Georgia statute to the effect that it was not to be applied in peaceful sit-in demonstrations.

Thus, Rachel allowed removal based on the alleged application of a state statute contrary to an Act of Congress, while the instant case involves the alleged application of a state statute contrary to the equal protection clause. The rationale of Rachel is inescapably applicable here, since both cases involve the denial of equal rights through statutory application, rather than through some infirmity appearing on the face of the state statute.

The City of Greenwood relies on the series of Supreme Court cases ending with Kentucky v. Powers, supra, in support of its contention that removal will not lie unless the deprivation of equal rights stems from the face of state legislation. See cases cited note 3, supra. The District Court took this view in ordering the cases remanded. The question is not without difficulty but we are constrained to a broader reading of these decisions.

The Supreme Court first had occasion to delineate the scope of § 1443(1) in Strauder v. West Virginia and Virginia v. Rives, decided the same day. In Strauder, a West Virginia statute limited jury service to "white male persons," and a Negro charged with murder sought removal on the grounds that this statute denied him in the courts of West Virginia his rights under the equal protection clause. The court held that a good claim for removal under the predecessor of § 1443(1) had been stated. In Virginia v. Rives, although the Virginia statute was non-discriminatory, the allegation was that state officials excluded Negroes when selecting juries. Here removal was disallowed. The court emphasized that the denial of equal rights must appear in advance of trial. In view of this requirement, the court stated that § 1443(1) was limited "primarily, if not exclusively" to denial of rights "resulting from the Constitution or laws of the State, rather than a denial first made manifest at the trial of the case." As for administrative deprivations of protected rights by state officials acting in violation of state law, "it ought to be presumed the [state] court will redress the wrong." The remaining cases relied on—Neal v. Delaware; Bush v. Kentucky; Gibson v. Mississippi, and Com. of Kentucky v. Powers—all involved administrative exclusion of Negroes from juries, and all hold in accordance with Virginia v. Rives that § 1443(1) affords no basis for removal under such circumstances.

In our view, these cases establish only that, in order to establish removal jurisdiction, the denial of equal rights through the systematic exclusion of Negroes from grand and petit juries must result from state legislative or constitutional provisions. The stated rationale for this rule was that the deprivation of protected rights had to be shown in advance of trial. However, this reasoning gives way to the fact that the illegality of a grand jury indictment springing from systematic exclusion would be susceptible of proof prior to trial. The rationale was also advanced in these decisions that

questions other than those arising from the terms of the statute should be left to state courts for vindication. This does not follow for state courts are bound under the Federal Constitution to protect a litigant from the loss of rights even in the case of express language in a state statute. In short, we do not read these cases as establishing that the denial of equal civil rights must appear on the face of the state constitution or statute rather than in its application where the alleged denial of rights, as here, had its inception in the arrest and charge. They dealt only with the systematic exclusion question, a question which in turn goes to the very heart of the state judicial process, and federalism may have indicated that the remedy in such situations in the first instance should be left to the state courts. We would not expand the teaching of these cases to include state denials of equal civil rights through the unconstitutional application of a statute in situations which are not a part of the state judicial system but which, on the contrary, arise in the administration of a statute in the arresting and charging process.

Thus, we find nothing in the prior decisions of the Supreme Court, nor in the language of § 1443 itself, to require limitation of that section to cases involving laws violative of equal rights on their face. We therefore hold that a good claim for removal under § 1443(1) is stated by allegations that a state statute has been applied prior to trial so as to deprive an accused of his equal civil rights in that the arrest and charge under the statute were effected for reasons of racial discrimination.

Of course, such allegations must be proved if they are challenged. Consequently, removal based on the misapplication of a statute may fail for want of proof. However, we deal here only with what allegations are sufficient to prevent remand without a hearing. Appellants allege that Mississippi Code § 2296.5 is being applied against them for purposes of harassment, intimidation, and as an impediment to their work in the voter registration drive, thereby depriving them of equal protection of the laws. We simply hold that these allegations entitle appellants to remove their cases to the federal court.[6] It follows that the District Court erred in remanding these cases to the state court without a hearing, and we reverse and remand for a hearing on the truth of appellants' allegations.

### III.

Appellants also sought removal under paragraph (2) of § 1443 on the ground that they were being prosecuted for acts done under color of authority derived from federal laws providing for equal rights. They alleged, as previously stated, that at the time of their arrests, they were engaged in a voter registration drive assisting Negroes to secure the right to vote as guaranteed by the Constitution and the Civil Rights Act of 1960, 42 U.S.C.A. § 1971 et seq. Again applying the philosophy of notice type pleading to the removal petitions, we construe them as alleging that appellants are being prosecuted for acts committed under color of authority of the equal protection clause and 42 U.S.C.A. § 1971. There is a complete absence of any allegation that appellants were acting in an official or quasi-official capacity. In essence, it is appellants' position that paragraph (2) of § 1443 authorizes removal by any person who is prosecuted for an act committed while exercising an equal civil right under the Constitution or laws of the United States. We cannot agree.

The Second Circuit recently had occasion to rule on the meaning of § 1443(2) in People of State of New York v. Galamison, Jan. 26, 1965, 342 F.2d 255, cert. den., 85 S.Ct. 1342. There, removal was sought by civil rights demonstrators who were being prosecuted for various acts

---

6. Proof of the allegations in this case would establish removal jurisdiction and *ipso facto* entitle appellants to dismissal of their prosecutions by the District Court. Failure of proof would require remand to the state court for trial.

which had disrupted traffic to the New York World's Fair. The court affirmed the District Court's order of remand. The demonstrators contended that they were being prosecuted for acts committed under color of authority of the equal protection clause, and 42 U.S.C.A. § 1981. The court, in an opinion by Judge Friendly, held that neither the equal protection clause nor § 1981 confers color of authority to perform the acts which the state alleged to be in violation of its laws of general application. The court stated:

> "When the removal statute speaks of 'color of authority derived from' a law providing for equal rights, it refers to a situation where the lawmakers manifested an affirmative intention that a beneficiary of such a law should be able to do something and not merely to one where he may have a valid defense or be entitled to have civil or criminal liability imposed on those interfering with him."

The Second Circuit expressly refrained from deciding whether § 1443(2) is limited to officers or persons acting in some way on behalf of government.

■ In City of Clarksdale, Miss. v. Gertge, N.D.Miss., 1964, 237 F.Supp. 213, Judge Clayton reached the question pretermitted in Galamison, holding that

from the generally accepted meaning of the phrase "color of authority," removal is not available under § 1443(2) unless the act for which the state prosecution is brought was done in at least a quasi-official capacity derived from a law providing for equal rights. This rationale was also the basis for the District Court's remand order in the present case. We agree with this construction.

Paragraph (2) of § 1443 had its genesis in the Civil Rights Act of 1866, 14 Stat. 27, where the operative language allowed removal of suits and prosecutions "against any officer, civil or military, or other person, for any arrest or imprisonment, trespasses, or wrongs done or committed by virtue or under color of authority derived from this act * * *" or the Freedmen's Bureau legislation.[7] This language survived in substance until the 1948 revision when the statute was recast in its present form, with all reference to the categories of persons being deleted. The 1948 reviser's note disclaimed any intention to change the substance of the section,[8] and in view of this, we feel that the more expansive language contained in the earlier enactments furnishes an appropriate guide to the true meaning of the section. Cf. Madruga v. Superior Court, 1954, 346 U.S. 556, 560 & n. 12, 74 S.Ct. 298, 98 L.Ed. 290, 296.

---

7. The first sentence of § 3 reads as follows:

> "*And be it further enacted*, That the district courts of the United States, within their respective districts, shall have, exclusively of the courts of the several States, cognizance of all crimes and offences committed against the provisions of this act, and also, concurrently with the circuit courts of the United States, of all causes, civil and criminal, affecting persons who are denied or cannot enforce in the courts or judicial tribunals of the State or locality where they may be any of the rights secured to them by the first section of this act; and if any suit or prosecution, civil or criminal, has been or shall be commenced in any State court, against any such person, for any cause whatsoever, or against any officer, civil or military, or other persons, for any arrest or imprisonment, trespasses or wrongs done or committed by virtue or under color of authority derived from this act or the act establishing a Bureau for the relief of Freedmen and Refugees, and all acts amendatory thereof, or for refusing to do any act upon the ground that it would be inconsistent with this act, such defendant shall have the right to remove such cause for trial to the proper district or circuit court in the manner prescribed by the 'Act relating to habeas corpus and regulating judicial proceedings in certain cases,' approved March three, eighteen hundred and sixty-three, and all acts amendatory thereof. * * *"

8. See H.R.Rep. No. 308, 80th Cong., 1st Sess. A 134 (1947).

**686**

Section 3 of the Civil Rights Act of 1866, the removal section, must be viewed in the context of the Act as a whole. Section 1, now 42 U.S.C.A. § 1981, declared Negroes to be citizens, conferred upon them various jurdicial rights of citizenship, such as the ability to make and enforce contracts, and guaranteed them the "full and equal benefit of all laws and proceedings for the security of person and property, as is enjoyed by white citizens, and shall be subject to like punishment, pains, and penalties, and to none other * * *." Section 2 made it a crime to deprive persons of rights secured by the act. Next followed the removal provision, now 28 U.S.C.A. § 1443. Sections 4–10 of the Act were devoted to compelling and facilitating the arrest and prosecution of violators of § 2. These sections, *inter alia,* authorized federal commissioners to appoint "suitable persons" to serve warrants, and allowed the persons so appointed to "summon or call to their aid the bystanders or posse comitatus of the proper county * * *."

When § 1443(2) is viewed in this perspective, it is plain that Congress was primarily concerned with protecting federal officers engaged in enforcement activity under the 1866 Act and the Freedmen's Bureau Legislation. The use of the more inclusive "officer * * * or other person" language is explained by the need to protect by-standers, members of the posse comitatus and other quasi-officials as well. Moreover, the language "for any arrest or imprisonment, trespasses, or wrongs * * * committed * * * under color of authority derived from this act" strongly suggests enforcement activity. Had Congress intended to allow removal by someone merely exercising an equal civil right, as appellants contend, it would have been quite simple to use the term "any person," as indeed was used in § 1443(1), rather than the limited "officer * * * or other person."

Thus, we feel that the original language and context of § 1443(2) compel the conclusion that that section is limited to federal officers and those assisting them or otherwise acting in an official or quasi-official capacity. This conclusion is buttressed by the fact that appellants' construction of paragraph (2) would bring within its sweep virtually all the cases covered by paragraph (1), thereby rendering that paragraph of no purpose or effect. Paragraph (1) requires a denial or the inability to enforce equal rights in the state court. If paragraph (2) covers all who act under laws providing for equal rights, as appellants contend, this requirement could be avoided simply by invoking removal under the second paragraph. Paragraph (1) is an adequate vehicle for the protection and vindication of the rights of appellants, and we find no warrant for giving paragraph (2) the strained and expansive construction here urged.

We therefore hold that the portion of the judgment of the District Court which denied removal based on § 1443 (2) was correct. However, the court erred in holding that the allegations of the petitions did not state a good claim for removal under § 1443(1), and this part of the judgment must be reversed and the case remanded to the District Court for a hearing on the truth of these allegations.

Affirmed in part; reversed in part; remanded for further proceedings not inconsistent herewith.