James **FORMAN** et al.,

v.

**CITY OF MONTGOMERY.**

Eugene W. **ADAMS** et al.,

v.

**CITY OF MONTGOMERY.**

**Richard BECKER** et al.,

v.

**CITY OF MONTGOMERY.**

Thomas **BERRY** et al.,

v.

**CITY OF MONTGOMERY.**

**Richard BALDWIN** et al.,

v.

**CITY OF MONTGOMERY.**

**Robert ALLISON** et al.,

v.

**CITY OF MONTGOMERY.**

Anya **ALLISTER** et al.,

v.

**CITY OF MONTGOMERY.**

Leonard **McGHEE**

v.

**CITY OF MONTGOMERY.**

Arthur **RAVITZ**

v.

**CITY OF MONTGOMERY.**
**Cr. Nos. 11727-N–11735-N.**

United States District Court
M. D. Alabama, N. D.
Aug. 3, 1965.

Charles S. Conley, of Montgomery, Ala., and William M. Kunstler, Kunstler, Kunstler & Kinoy, and Martin Berger, New York City, for petitioners.

Matthis W. Piel, City Pros., Montgomery, Ala., for City of Montgomery.

JOHNSON, District Judge.

The petitioners, 167 in number, some of whom are Negro and some of whom are white, seek to remove to this Court criminal prosecutions pending against them in the Recorder's Court, City of Montgomery, Alabama. Removal is sought pursuant to the provisions of 28 U.S.C. § 1443.[1] The petitioners allege that they were arrested and are being prosecuted for acts done pursuant to the First, Thirteenth, Fourteenth and Fifteenth Amendments to the Constitution of the United States, as well as 42 U.S.C. §§ 1971, 1981 et seq., and the Civil Rights Act of 1964; furthermore, they allege that they cannot enforce their

---

1. "§ 1443.   Civil rights cases

"Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

"(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

"(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law."

rights in the courts of the State of Alabama, including the Recorder's Court of the City of Montgomery, by reason of the fact that Negroes have been and are currently systematically excluded from service as jurors, that the judges of the courts of the State of Alabama are elected by an electorate from which Negroes are systematically excluded, and that the judges and the juries of the courts of the State of Alabama are openly and notoriously biased against petitioners and their cause.

Upon the receipt of the petitions for removal and upon the filing by the City of Montgomery of motions to remand, this Court, after giving due notice, set the cases for a hearing for the purpose of allowing the petitioners an opportunity to offer proof that they were arrested and are being prosecuted by the City of Montgomery, Alabama, and the State of Alabama for acts done under color of authority derived from the Constitution of the United States or any law thereof providing for equal rights to citizens, and for the purpose of determining whether any of the petitioners are being denied, or cannot enforce in the courts of the State of Alabama, a right under the laws providing for the equal civil rights of citizens of the United States.[2]  Pursuant to the oral agreement of counsel, this Court on April 12, 1965, entered a formal order consolidating these nine cases for the purpose of the hearing upon the motions to remand.  The submission is now upon the evidence taken orally before the Court, the several exhibits introduced and admitted, and the briefs of the parties.

The facts leading up to the arrest of the petitioners and the activities being engaged in by the petitioners at the time of the arrests in each of these cases are as follows:

In criminal case No. 11,727–N, each of the seven petitioners is either a staff member or is associated with the Student Nonviolent Coordinating Committee, (SNCC), a nonincorporated civil rights organization dedicated to the achievement of the rights of Negro citizens of the State of Alabama and elsewhere. These seven petitioners were arrested on March 11, 1965, by police officers of the City of Montgomery and were charged with violating Chapter 20, § 18 of the Montgomery City Code.[3]

These petitioners, together with many others, came to Montgomery, Alabama, in March to participate in certain demonstrations that were designed to dramatize discrimination against Negro citizens of Alabama in the field of voting. On the morning of March 11, 1965, a meeting was conducted to discuss plans in connection with these aims; the meeting was held in the Dexter Avenue Baptist Church and was attended by several hundred persons.  Petitioners James Forman, William Stuart House, William D. Ware and George Bess departed from the church and proceeded up Dexter Avenue toward the State Capitol for the avowed purpose of presenting a petition to the Governor of the State of Alabama. Upon being denied access to the Capitol by Alabama state troopers, they attempted to return to the church.  Because of the general situation then existing throughout the City of Montgomery, Montgomery city police officers had promulgated certain rules designed to keep order among the many "demonstrators" in that area of Montgomery, Alabama, at that particular time.  Forman, House, Ware and Bess were advised by Montgomery police officers near the Dexter

---

2. Such procedure, outlined in Rachel, et al. v. State of Georgia (5th Cir., Mar. 1965), 342 F.2d 336, is for the purpose of determining whether petitioners are entitled to a federal forum, as provided for in 28 U.S.C. § 1443, for the trial of these criminal prosecutions.

3. The Code of the City of Montgomery, Alabama, 1952, as amended (hereinafter cited as Montgomery City Code), Chapter 20, § 18:

"Sec. 18. Disorderly conduct.

"It shall be unlawful for any person in the city to disturb the peace of others by violent, profane, indecent, offensive or boisterous conduct or language, or by conduct calculated to provoke a breach of the peace."

Avenue Baptist Church that, in order to return to the Dexter Avenue Baptist Church, they would have to proceed along a designated route. Forman, House, Ware and Bess refused to proceed along the route designated by the officers; instead, they "went limp" and lay down in the middle of the street. Upon being requested by the officers to remove themselves from the street so that the normal flow of traffic could resume, they refused to do so and were arrested and taken to the Montgomery City Jail. There was no violence in the area at the time, and Forman, House, Ware and Bess suffered no mistreatment at the hands of the arresting officers. Petitioners William Hall, Christopher Wiley and Charles Granville attempted to leave the Dexter Avenue Baptist Church for the purpose of joining Forman and his group who were then "lying limp" in the street. Upon being refused permission to join Forman and his group, Hall, Wiley and Granville "went limp" on the sidewalk adjacent to the church and refused to remove themselves after being ordered to do so by the officers. The activities of Forman and his group and Hall and his group attracted the attention of those in the church, and over one hundred "demonstrators" came out of the church, onto the streets and sidewalks. The action of Hall and his group resulted in blocking the sidewalk adjacent to the church until they were arrested after refusing to remove themselves as ordered by the police officers. As in the case of Forman and his group, there was no violence upon or mistreatment of Hall and his group.

In criminal case No. 11,728–N, the Montgomery city police arrested approximately 70 individuals on March 18, 1965, and charged them with violating the provisions of Chapter 20, § 59, Code of the City of Montgomery, Alabama.[4] The individuals arrested and now petitioning this Court for removal in this case are

either staff members or are associated with the Student Nonviolent Coordinating Committee (SNCC). The petitioners are both white and Negro citizens. In the afternoon on March 18, 1965, these petitioners, together with others who were not arrested, had proceeded from the Jackson Street Baptist Church located in Montgomery, Alabama, and had marched or paraded to the vicinity of the Alabama State Capitol. This group also had as its avowed purpose the protesting of the denial to Negroes by the State of Alabama of the right to vote. Upon reaching the Capitol, they sought to parade on the sidewalk, but were refused access to the sidewalk by reason of the fact that a considerable number of Alabama state troopers were standing shoulder-to-shoulder. Upon determining that the sidewalk was not accessible, these petitioners conducted their parade and picketing in Bainbridge Street. After a considerable length of time, they were ordered to remove themselves from the street by city police officers; upon their refusal to do so and after some of the petitioners sat down in the street, the petitioners were arrested and removed to the Montgomery City Jail. The action on the part of the Montgomery city police in this case was taken after Bainbridge Street—one of the main streets located adjacent to the Alabama Capitol and one of the busiest thoroughfares in the City about five in the afternoon—had been blocked for approximately one and one-half hours by these petitioners.

Criminal case No. 11,729–N involves the arrest on March 19, 1965, by the Montgomery city police of approximately 31 individuals who are also either staff members or are associated with the Student Nonviolent Coordinating Committee. In the late afternoon of March 18, 1965, shortly after the individuals who are petitioning in criminal case No. 11,-

---

4. Ordinance No. 31–61, never formally incorporated into the 1952 Montgomery City Code, as amended, presently codified as follows:

   " * * * Obedience to orders and directions.

"It shall be unlawful for anyone to fail to obey the direction or order of a member of the police department of the city while such member is acting in an official capacity in carrying out his duties."

728–N were arrested in front of the Alabama State Capitol, approximately 50 individuals, including these 31 petitioners, marched from the vicinity of the Capitol to the Montgomery, Alabama, City Hall, with the avowed purpose of protesting the arrest of the petitioners named in criminal case No. 11,728–N. They walked two abreast on the sidewalk after reaching the City Hall and picketed or marched in this manner from approximately five-thirty in the afternoon on March 18, 1965, until shortly after midnight on March 19, 1965. While so parading around the City Hall and while city traffic court was being conducted, the petitioners sang "freedom" songs but were allowed to continue this activity without any interference from the officers. The interference from the officers came when the petitioners stopped marching and sat on the sidewalk. After the petitioners had blocked the sidewalk by sitting on it, they were ordered by the city police officers to remove themselves. Upon their refusal to do so, they were arrested and charged with violating the Montgomery, Alabama, "loitering on sidewalk" ordinance.[5] The action taken by the Montgomery city policemen in arresting the petitioners in this case occurred after they had been permitted to picket for approximately eight hours, and occurred only after the petitioners had stopped their picketing and had begun to sit upon and block the sidewalks surrounding the Montgomery, Alabama, City Hall.

Criminal case No. 11,730–N involves the arrest by Montgomery city police officers of six individuals on March 22, 1965, at or near the State Capitol building in the City of Montgomery, Alabama. The petitioners in this case are also either staff members or are associated with the Student Nonviolent Coordinating Committee (SNCC) and were, together with several other individuals both white and Negro, arrested while parading or marching in the Montgomery city streets after they had been warned and ordered to remove themselves from the street and after they had refused to do so. These petitioners were also protesting the denial to the Negro of his right to vote. The six individuals in this case were, upon being arrested, charged with violating Chapter 20, § 59 of the Code of the City of Montgomery.[6]

In criminal cases Nos. 11,731–N, 11,-732–N and 11,733–N, the evidence reflects that 10, 25, and 16 individuals, respectively, were arrested by the city police officers, all on March 19, 1965, and were in each instance charged with violating Chapter 20, § 59, Code of the City of Montgomery.[7] Prior to the time these petitioners were arrested, they had been parading and picketing in the vicinity of the Alabama State Capitol, upon the Montgomery city streets. These petitioners were also protesting the denial of voting to Negroes by the State. Upon several occasions they were ordered to remove themselves from the streets because they were blocking the regular flow of traffic and the normal use of the streets by vehicular traffic. They were offered an opportunity by the police officers who requested them to remove themselves from the street to do their parading and picketing on the sidewalks. When they refused to remove themselves from the street and refused to use the sidewalks, they were arrested for refusing to obey the lawful order of an officer.

In criminal cases Nos. 11,734–N and 11,735–N, no evidence was presented in support of the allegations in the removal petitions that these petitioners were arrested and are being prosecuted

5. Montgomery City Code, Chapter 20, § 36:
"Sec. 36. Loitering.
"No person, after being warned by a police officer, shall loiter on the sidewalks in the city in front of business establishments, public buildings or houses of worship, nor shall any person sit upon or lean against the walls around residences in the city, without obtaining the consent of the owner, occupant or person in control of such premises."

6. See Footnote 4, supra.

7. See Footnote 4, supra.

by the City of Montgomery and the State of Alabama for reasons and under such circumstances that would entitle them to a federal forum as provided for in 28 U.S.C. § 1443. Since they have failed to sustain their burden of proving the allegations as set out in the removal petitions, these two cases will be remanded for that reason. Rachel, et al. v. State of Georgia, supra.

■ Petitioners' contentions in each of the nine cases above-styled that Subsection (2) of Section 1443 should be invoked to sustain their right of removal to this Court will be discussed first. This argument is predicated upon the theory that the petitioners were arrested and are being prosecuted for acts done under color of authority derived from federal laws providing for equal rights. The law is clear that removal to a federal forum from a state or city forum under the facts and circumstances as disclosed from the evidence in these cases is not available. People of State of New York v. Galamison (2d Cir., Jan. 26, 1965), 342 F.2d 255, cert. denied 380 U.S. 977, 85 S.Ct. 1342, 14 L.Ed. 272; Peacock et al. v. City of Greenwood, Mississippi (5th Cir., June 22, 1965), 347 F.2d 679. The evidence in these cases is clear that the acts for which these petitioners were arrested and are being prosecuted by the City of Montgomery, Alabama, were not done in any official or quasi-official capacity derived from any law providing for equal rights. The above-cited cases are clear that when Subsection (2) of Section 1443 speaks of "color of authority derived from" any law providing for equal rights, it is referring to a situation where a beneficiary of that portion of the statute should be allowed to do something and not merely to a situation where he may have a valid defense in a prosecution for the commission of the act; thus, as the Second Circuit did in Galamison and as the Fifth Circuit did in Peacock, this Court concludes that Subsection (2) of Section 1443 is limited to officers and those assisting them or otherwise acting in an official or quasi-

official capacity. None of these petitioners were so acting.

■ In considering the petitioners' contentions under Subsection (1) of Section 1443, to the effect that they have been denied or cannot enforce in the courts of the City of Montgomery and the State of Alabama their rights under the Constitution and laws of the United States providing for the equal civil rights of citizens of the United States, this Court specifically finds and concludes that the City of Montgomery and the State of Alabama, acting through the arresting officers in arresting these petitioners and acting through the court officials in prosecuting these petitioners, were not and are not denying the petitioners any right under any constitutional or statutory provision providing for the equal civil rights of citizens of the United States. There is nothing involved in any of the cases now presented comparable to the denial of services and the request of removal from places of public accommodation such as was involved in the case of Hamm v. City of Rock Hill, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300. There was nothing involved in Cox v. State of Louisiana (Jan. 1965), 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471, comparable to the conduct being engaged in prior to and at the time these petitioners were arrested by the City of Montgomery police authorities. For instance, Cox's orderly and peaceable march along the sidewalks in downtown Baton Rouge, Louisiana, without any obstruction of the streets or any unreasonable obstruction of the sidewalks is in sharp contrast to the conduct of the petitioners in these cases. As a matter of fact, the Supreme Court in Cox v. State of Louisiana, supra, specifically condemns the type of conduct engaged in by the petitioners in these cases prior to and at the time they were arrested in Montgomery, Alabama. In this connection, the Supreme Court stated:

"Appellant, however, contends that as so construed and applied in this case, the statute is an unconstitutional infringement on freedom

of speech and assembly. This contention on the facts here presented raises an issue with which this Court has dealt in many decisions. That is, the right of a State or municipality to regulate the use of city streets and other facilities to assure the safety and convenience of the people in their use and the concomitant right of the people of free speech and assembly. See Lovell v. Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949; Hague v. CIO, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423; Schneider v. State of New Jersey, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155; Thorhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093; Cantwell v. State of Connecticut, 310 U.S. 296; Cox v. State of New Hampshire, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049; Largent v. State of Texas, 318 U.S. 418, 63 S.Ct. 667, 87 L.Ed. 873; Saia v. New York, 334 U.S. 558; Kovacs v. Cooper, 336 U.S. 77; Niemotko v. State of Maryland, 340 U.S. 268, 71 S.Ct. 325, 95 L.Ed. 267; Kunz v. People of State of New York, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280; Poulos v. State of New Hampshire, 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105.

"From these decisions certain clear principles emerge. The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. The control of travel on the streets is a clear example of governmental responsibility to insure this necessary order. A restriction in that relation, designed to promote the public convenience in the interest of all, and not susceptible to abuses of discriminatory applica-tion, cannot be disregarded by the attempted exercise of some civil right which, in other circumstances, would be entitled to protection. One would not be justified in ignoring the familiar red light because this was thought to be a means of social protest. Nor could one, contrary to traffic regulations, insist upon a street meeting in the middle of Times Square at the rush hour as a form of freedom of speech or assembly. Governmental authorities have the duty and responsibility to keep their streets open and available for movement. A group of demonstrators could not insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations. See Lovell v. Griffin, supra, 303 U.S. at 451, 58 S.Ct. at 668; Cox v. State of New Hampshire, supra, at 574, 61 S.Ct. at 765; Schneider v. State of State, supra, 308 U.S. at 160-161, 60 S.Ct. at 150; Cantwell v. State of Connecticut, supra, at 306-307, 60 S.Ct. at 904; Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834; Poulos v. State of New Hampshire, supra, 345 U.S. at 405-408, 73 S.Ct. at 466, 467; see also, Edwards v. State of South Carolina, supra, 372 U.S. at 236, 83 S.Ct. at 683.

"We emphatically reject the notion urged by appellant that the First and Fourteenth Amendments afford the same kind of freedom to those who would communicate ideas by conduct such as patrolling, marching, and picketing on streets and highways, as these amendments afford to those who communicate ideas by pure speech. See the discussion and cases cited in No. 49, post, at 563. We reaffirm the statement of the Court in Giboney v. Empire Storage & Ice Co., supra, 336 U.S. at 502, 69 S.Ct. at 691, that 'it has never been deemed an abridgment of freedom of speech or press

to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.' "

It is clearly demonstrated from the evidence taken upon this submission that the officials of the City of Montgomery and the State of Alabama, by arresting and prosecuting the petitioners in these cases, were not acting under pretense of preserving segregation and were not acting under any pretense for the purpose of harassing and punishing citizens for the exercise of their constitutional rights or federally-protected statutory rights. To the contrary, these governmental officials were discharging their duty and responsibility to keep the streets and sidewalks open and reasonably available for normal use. They were confronted by a group of civil rights demonstrators who were insisting upon blocking vehicular traffic on the streets and pedestrian traffic on the sidewalks, and, when so confronted, they acted in a reasonable manner in carrying out their governmental responsibilities.

■■ The petitioners' argument and claim in these cases that they are being denied equal protection of the law and that the Montgomery ordinances are being enforced as to them as a part of a policy of racial discrimination maintained by both the City of Montgomery and the State of Alabama is, under the evidence, without support. There is no basis for finding or concluding that these ordinances were invoked discriminatorily to harass and impede these petitioners in their efforts to exercise any constitutional or statutory rights providing for the equal civil rights of citizens of the United States. To the contrary, the evidence supports the finding that, prior to the time any arrests were made, the law enforcement officials of the City of Montgomery made timely and fair requests of these petitioners to cease their illegal conduct. The requests and the action on the part of the officials do not reflect any policy of racial dis-

crimination. When arrested, the petitioners were engaged in an illegal conduct that had, under the circumstances leading up to and surrounding their ,actual arrests, reached the point of being of an aggravated nature. The "common denominator" of arrest and prosecution for the exercise of civil rights— as stated by Judge Wisdom in speaking for the United States Court of Appeals for the Fifth Circuit in Cox v. State of Louisiana (June 29, 1965), 348 F. 2d 750, that existed in Rachel et al. v. State of Georgia, supra, and Peacock v. City of Greenwood, Mississippi, supra, does not exist in the cases now before this Court.

■ There is no constitutional or statutory right, as this Court understands the law, that prohibits arrests and prosecutions for conduct such as these petitioners were engaged in prior to and at the time they were arrested. The basic and glaring fallacy in the petitioners' reliance upon Rachel, Peacock and Cox is that such reliance is predicated upon the assumption that the petitioners had a constitutional or statutory right to engage in the conduct for which they were arrested and are being prosecuted. Such is not the case; to the contrary, the conduct of the petitioners was illegal. There is no immunity conferred by our Constitution and laws of the United States to those individuals who insist upon practicing civil disobedience under the guise of demonstrating or protesting for "civil rights." The philosophy that a person may—if his cause is labeled "civil rights" or "states rights"—determine for himself what laws and court decisions are morally right or wrong and either obey or refuse to obey them according to his own determination, is a philosophy that is foreign to our "rule-of-law" theory of government. Those who resort to civil disobedience such as the petitioners were engaged in prior to and at the time they were arrested cannot and should not escape arrest and prosecution. Civil disobedience by "civil rights workers" in the form of "going limp" and ly-

ing or marching in the streets or upon the sidewalks, or marching around the city hall while night court was in session, singing "freedom" songs or taking to the streets to do their parading and picketing in lieu of using the sidewalks, while failing to make any application to city authorities for a parade permit, is still a violation of the law and subjects the violators to being prosecuted in the courts of the cities and states where such occurs.

These petitioners and others so inclined must come to recognize that judicial processes are available for the purpose of protecting their constitutional rights in this district. This does not mean to say that peaceful, orderly and lawful demonstrations (such as were being practiced by the petitioners in criminal case No. 11,739–N, this date dismissed by this Court) for purposes of dramatizing grievances or protesting discrimination can ever justify arrests and prosecutions; however, demonstrations and protests in a disorderly and unpeaceful and unlawful manner are not sanctioned by the law as this Court understands it. There is a place in our system for citizens, both Negro and white, who wish to protest civil wrongs or present grievances against violations of their rights, to do so, provided they act in a peaceful and orderly manner and provided they resort to the courts and not to the streets when they are thwarted in the exercise of this privilege by authorities acting under color of law.

Pursuant to the findings as herein set out, it is now concluded that none of the petitioners were arrested or are being prosecuted by the City of Montgomery, Alabama, or the State of Alabama for the purpose of denying them or preventing them from enforcing in the courts any of their constitutional or statutory rights for the equal civil rights of the citizens of the United States. It is further concluded that the Montgomery city ordinances as applied and enforced in each of these nine cases do not, in any instance, violate any of the petitioners' rights as guaranteed by the Constitution or laws of the United States. This Court further concludes that there is no credible evidentiary showing in support of the allegations as made by these petitioners that they cannot enforce in the courts of the City of Montgomery and of the State of Alabama their equal civil rights as citizens of the United States. It follows, therefore, that these cases are not properly removable to this Court under either of the provisions of 28 U. S.C. § 1443 and that the cases should be remanded to the Recorder's Court of the City of Montgomery, Alabama.

In accordance with the foregoing, it is, therefore, the order, judgment and decree of this Court that the motion of the City of Montgomery filed in each of the above-captioned cases, seeking to have each case remanded to the Recorder's Court of the City of Montgomery, Alabama, be and the same is hereby granted.

It is ordered that these cases be and each is hereby remanded to the Recorder's Court of the City of Montgomery, Alabama.

It is further ordered that the costs incurred in these proceedings be and they are hereby taxed against the petitioners, for which execution may issue.