Jan HILLEGAS, Appellant,

v.

Joe SAMS, Jr., County Attorney for
Lowndes County, Mississippi,
et al., Appellees.

No. 22241.

United States Court of Appeals
Fifth Circuit.

Aug. 16, 1965.

Rehearing Denied Sept. 27, 1965.

R. Jess Brown, Henry M. Aronson, Jackson, Miss., Anthony G. Amsterdam, Philadelphia, Pa., Jack Greenberg, New York City, for appellant.

William A. Allain, Asst. Atty. Gen., Jackson, Miss., for appellees.

Before JONES and BROWN, Circuit Judges, and SHEEHY, District Judge.

JONES, Circuit Judge.

The appellant, Jan Hillegas, brought a habeas corpus proceeding in the United States District Court for the Northern District of Mississippi claiming she was detained by the appellees unlawfully and in violation of Federally guaranteed rights. The facts herein recited are as set forth in her petition and, for the purposes of the case, are assumed to be true. The appellant is a white woman, twenty-one years of age, and went to Lowndes County, Mississippi from Syracuse, New York. In Mississippi she was associated with the Congress of Federated Organizations (COFO) in assisting Negroes in their efforts to register to vote. COFO arranged for her meals and lodging. Such money as she needed was supplied by her mother. While in the county courthouse of Lowndes County at Columbus, Mississippi, sitting on a bench with two other COFO workers, the appellant and her companions were told by a deputy of the appellee, Sheriff Taylor, to leave the courthouse and that if they did not leave he would arrest them. They did not leave and he arrested them, took them to the Sheriff's office where they were told they were charged with vagrancy. Appellant and her companions attempted, by a show of currency and other means, to persuade the deputy sheriff that they were not vagrants. Their efforts produced no results and they were confined in the county jail. Other efforts, equally unavailing, were made to procure appellant's release. She then filed a petition for habeas corpus in the United States District Court which was denied. This appeal is from the order of the district court, which based its order upon failure to exhaust available state remedies. No effort was made to obtain relief in the courts of Mississippi. Nothing is here shown to call for the application of a different rule than was announced and applied in Brown v. Rayfield, 5th Cir. 1963, 320 F.2d 96, cert. den. 375 U.S. 902, 84 S.Ct. 191, 11 L.Ed.2d 143, and

in the case of In re Wykcoff, 6 Race Rel.L.Rep. 786, 793, which is discussed in Brown v. Rayfield. The principles announced in those cases sustain the decision of the district court and its judgment is

Affirmed.

JOHN R. BROWN, Circuit Judge (concurring).

I concur, but solely because Brown v. Rayfield, so long as it stands, squarely rules this case. But, with deference, that decision, the victim of inadequate presentation, is, I think, wrong and ought to be reversed.

Petitioner Hillegas' petition, seeking federal habeas corpus relief pursuant to 28 U.S.C.A. § 2241, alleges in unequivocal, factually detailed, language that she is held[1] in state custody in violation of her federal constitutional right. Applying Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed. 2d 80, as we must, this means that the Court holds that prosecution and trial by a state to effectuate unconstitutional race discrimination is not an "extraordinary" case. I can imagine nothing more extraordinary.

Parts I–VI of the petition describe Miss Hillegas, her resources, her work for COFO in Lowndes County in assisting Negroes in confirming their voting rights in the face of past discrimination by the County Registrar under the color of Mississippi law and constitutional provisions, noting particularly that the Lowndes County Registrar was a named party in the Government's massive assault on these provisions and practices in United States v. State of Mississippi, S.D.Miss. (3-Judge), 1964, 229 F.Supp. 925, reversed, 1965, 380 U.S. 128, 85

S.Ct. 808, 13 L.Ed.2d 717. Then in Part VII, it is specifically asserted: (1) If the Mississippi vagrancy statute[2] is construed to apply to her conduct, it would be violative of her "freedom of speech, of association and assembly (U.S.CONST. Amends. I, XIV), of her federal privilege to disseminate information pertinent to registration and voting in national elections, and to encourage and support Negro citizens of Mississippi to register and vote in national elections (U.S.CONST., Amend. XV)," and (2) if the vagrancy statute is construed to save its constitutionality, "there is no evidence to support the charge * * * consistently with due process of law (U.S.CONST., Amend. XIV)."[3]

It is next asserted that her arrest and detention is for the purpose of deterring her from exercising the constitutional rights previously mentioned, and Negro citizens from seeking to secure their constitutional franchise. In Part VIII, all of this is said to be pursuant to a state wide practice of segregation, subscribed to by all public officials—including state judges who are popularly elected. She candidly and expressly acknowledges that no attempt was made to exhaust state remedies, maintaining this to be unnecessary in light of the facts alleged.

The District Court disagreed and, without holding an evidentiary hearing, dismissed for lack of exhaustion, relying on In re Wycoff and Brown v. Rayfield, cited in the Court's opinion, supra. Both of those cases held that a case for the exception to the exhaustion requirement of 28 U.S.C.A. § 2254 had not been made out. From an examination of these cases, and particularly a close

1. She was subsequently released on bond.

2. Miss.Code Ann. § 2666:
   "The following persons are and shall be punished as vagrants, viz.: * * *
   "(c) All persons able to work, having no property to support them, and who have no visible or known means of fair, honest, and reputable livelihood. * * * *"

3. The authorities supporting (2) as a serious constitutional issue have been recently reviewed by Chief Justice Warren in his dissent from the Supreme Court's refusal to hear Drews v. Maryland, 1965, 381 U.S. 421, 85 S.Ct. 1576, 14 L.Ed. 2d 693 [June 1, 1965].

reading of the briefs filed in Brown, it is apparent that the Court did not there have before it the same, rich historical materials on the intent of Congress in passing the Act of 1867 (the forerunner of § 2241) and the early court decisions interpreting it, relative to the extent of the availability of pre-trial federal habeas relief, set forth in Appellant's lengthy, scholarly, completely annotated brief filed by Professor Anthony Amsterdam.[4]

How Wycoff ever got into Brown is a mystery.

Wycoff is simply inapposite. Being an application for *post* conviction habeas relief, the case was put and argued as to whether that case came within the exception to the exhaustion requirement of § 2254—"that there is either an absence of available State corrective process *or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner."* Section 2254, however, has nothing to do with our case. This is so because that section, in requiring exhaustion as a general rule, has to do only with those "in custody pursuant to the *judgment of a State court * * *."* It necessarily relates solely to post-conviction habeas.

Here we have a pre-trial petition, uncluttered by any state court judgment. Statutory restrictions on post-conviction habeas are not really pertinent. But this is where Brown v. Rayfield complicates the matter. For that case, as in the one before us, involved a pre-trial application for habeas relief for an arrest and confinement and under similar circumstances.[5] Relying, as any good Court ought to do, on the earnest, but historically incomplete presentations of counsel who mistakenly urged that the case was one coming within the exception to § 2254 (applicable only to post conviction), the Court followed Wycoff holding that under § 2254, exhaustion was necessary. Examining it wholly from the typical exhaustion point of view, the Court stopped short of considering whether the petitioner should be allowed to make proof in an appropriate hearing of his allegation that the prosecution was instituted for a racially discriminatory purpose, and that he could not get a fair trial.[6]

Professor Amsterdam points out the exhaustion requirement relative to pre-trial habeas petitions is a court-made doc-

4. These materials are substantially duplicated in Professor Amsterdam's recent article, Criminal Prosecutions Affecting Federally Guaranteed Civil Rights: Federal Removal and Habeas Corpus Jurisdiction to Abort State Court Trial, 113 U.Pa.L.Rev. 793, 805–912 (1965).

5. The petition in Brown v. Rayfield alleged that petitioners, while walking single file carrying signs protesting segregation, were arrested and detained for "parading without a permit."

6. This is quite different from the approach taken by this Court with regard to removal, 28 U.S.C.A. § 1443(1), whereunder similar allegations are often made. In Peacock v. City of Greenwood, Mississippi, 5 Cir., 1965, 347 F.2d 679 [June 22, 1965], holding that a petition for removal alleging discriminatory application of a facially valid state statute (same issue as here) was sufficient for removal, entitling the petitioner to establish factually his charge that the prosecution was undertaken for racially discriminatory purposes. (See discussion of Rachel v. State of Georgia, infra.) Emphasizing that the decision went only to the right to be heard on the jurisdictional facts, the Court stated:

"Of course, such allegations must be proved if challenged. Consequently, removal based on the misapplication of a statute may fail for want of proof. However, we deal here only with what allegations are sufficient to prevent remand without a hearing." The allegation was "that Mississippi Code § 2296.5 [obstruction of public streets] is being applied against [the petitioners] for purposes of harassment, intimidation, and as an impediment to their work in the voter registration drive, thereby depriving them of equal protection of the laws." 347 F.2d at 684.

But as in Rachel, determination (after hearing) that the case is removable automatically resolves the issue and forbids the state criminal trial. This allegation is, of course, precisely made in the case before us.

trine flowing from Ex parte Royall, 1886, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868, designed to curb pre-trial abuses of the writ. He argues convincingly that in spite of Royall and its progeny, Congress, in passing the Habeas Act in 1867, intended and the Courts have accorded, substantial utilization of the writ as a pre-trial remedy—in extraordinary circumstances. The question, therefore, is whether the category of cases which Professor Amsterdam advisedly terms "civil rights cases," [7] or perhaps more narrowly those where the petitioner is, contrary to his federal constitutional rights, being prevented from assisting in the ongoing of an important federal interest—such as voter registration—is the kind of extraordinary case, as to which Congress intended and the courts have allowed, pre-trial federal habeas relief. This question, far more complicated and serious than made to appear in Brown v. Rayfield, deserves a considered answer not in the darkness of that unillumined presentation but in the full light of these historical-juridical materials which are a classic of legal literature though unpersuasive here.

Any such reassessment will demonstrate that the same factors are at work in parallel systems of effective federal redress against state inspired, state caused, state permitted, instances of unequal treatment.

Dombrowski v. Pfister, 1965, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22, involves the role of the injunction pursuant to 42 U.S.C.A. § 1983. There plaintiffs sought to enjoin the anticipated enforcement of state subversive activity control statutes against their free expression activities aimed at the advancement of Negro civil rights. Must we not say here, as did the Supreme Court in Dombrowski in distinguishing the usual non-injunction rule of Douglas v. City of Jeanette, 1943, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324, that "the allegations in this complaint depict a situation in which defense of the State's criminal prosecu-

tion will not assure adequate vindication of constitutional rights. They suggest that a substantial loss or impairment of freedoms of expression will occur if appellants must await the state court's disposition and ultimate review in this Court of any adverse determination. These allegations, if true, clearly show irreparable injury. * * * Because of the sensitive nature of constitutional expression, we have not required that all of those subject to overbroad regulations risk prosecution to test their rights." 380 U.S. at 485–486, 85 S.Ct. at 1120–1121, 14 L.Ed.2d at 28. In Dombrowski, as here, the motive for the prosecution was challenged, and with the factor present in the allegations that the arrest, confinement and prosecution is really part of a scheme of harassment, the prospect of eventual success in the state courts or correction in the Supreme Court is an inadequate protection of the constitutional right to free expression. 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 29.

In 1961 we took similar action in United States v. Wood, 5 Cir., 1961, 295 F.2d 772, where prosecution of the alleged assailant was enjoined because of its disruptive effect on others then seeking to exercise constitutional rights (voter registration).

More recent is Rachel v. State of Georgia, 5 Cir., 1965, 342 F.2d 336, involving the civil rights removal statute, 28 U.S. C.A. § 1443. Since a "statute", as construed by this Court, was alleged to be one of the causes of discrimination, the case came within the traditional grounds for removal, Commonwealth of Kentucky v. Powers, 1906, 201 U.S. 1, 26 S.Ct. 387, 50 L.Ed. 633; State of Virginia v. Rives, 1879, 100 U.S. 313, 25 L.Ed. 667. Going even further is Peacock v. City of Greenwood, Mississippi, June 22, 1965, note 6, supra, in which we held "that a good claim for removal under § 1443(1) is stated by allegations that a state statute has been applied prior to trial so as to deprive an accused of his equal civil rights in that the arrest and charge un-

---

7. See Amsterdam, supra, note 3, at 804.

der the statute were effected for reasons of racial discrimination." 347 F.2d at 684.

And this was given full voice by us in Cox v. Louisiana, 5 Cir., June 29, 1965, 348 F.2d 750, in which we granted a stay pending appeal to prevent state prosecution charged to have been initiated to "harass and punish citizens for the exercise of their constitutional rights. * * *" 348 F.2d at 752.

Pointing to the congressional view and the receding scope we give to the Douglas v. City of Jeanette comity concept in the face of the use of the laws machinery as the engine of racial denials is Dilworth v. Riner, 5 Cir., 1965, 343 F.2d 226. In an extended opinion authored by Judge Bell, we declared that the Civil Rights Act of 1964 overrode the general comity statute, 28 U.S.C.A. § 2283, to permit injunctions against state prosecutions for ,actions which were constitutionally protected.

Thus we have now passed the point where Federal Courts can refuse to hear evidence in support of a factually detailed claim that a state criminal prosecution has been initiated to effectuate racially motivated denial of constitutional rights. By civil injunction and removal we recognize that this much interference with state criminal prosecutions is the price we pay under the Supremacy Clause.[8]

In doing so we conclude that the situation is "extraordinary" and therefore calls for extraordinary relief. That the Great Writ which is always free of technical impediments is now relegated to a second class role is a surprise. All the more is my surprise that we can hold that deliberate, purposeful use by the State of its criminal machinery to wreak denials of constitutional rights is not an "extraordinary" case.

Brown v. Rayfield may be the latest, but it cannot be the last word on this vital question.

---

8. I recognize that with removal and civil injunction being less peremptory, a Court might well defer action on a habeas petition pending use of these flexible devices. Likewise, availability of such devices might, after a hearing to resolve the truth of the charges, permit some discretion in denial or deferment of the writ.