Alfreda JOHNSON et al.

v.

CITY OF MONTGOMERY.
Douglas McCANTS, Lincoln Mallisham, and Randolph Glenn

v.

CITY OF MONTGOMERY.
Cr. Nos. 11740–N, 11741–N.

United States District Court
M. D. Alabama, N. D.
Aug. 3, 1965.

JOHNSON, District Judge.

The petitioners, sixteen in number, some of whom are Negro and some of whom are white, seek to remove to this Court certain criminal prosecutions pending against them in the Recorder's Court, City of Montgomery, Alabama. Removal is sought pursuant to the provisions of 28 U.S.C. § 1443.[1] The petitioners allege that they were arrested and are being prosecuted for acts done pursuant to the First, Thirteenth, Fourteenth and Fifteenth Amendments to the Constitution of the United States, as well as 42 U.S.C. §§ 1971, 1981, 1983, and Title I of the Civil Rights Act of 1964; furthermore, they allege that they cannot enforce their rights in the courts of the State of Alabama by reason of the fact that Negroes have been and are currently systematically excluded from service as jurors, that the judges of the courts of the State of Alabama are elected by an electorate from which Negroes are systematically excluded, and that the judges and the juries of the courts of the State of Alabama are openly and notoriously biased against petitioners and their cause.

On the receipt of the petitions for removal and upon the filing by the City of Montgomery of motions to remand, this Court, after giving due notice, set the cases for a hearing for the purpose of allowing the petitioners an opportunity to offer proof that they were arrested and are being prosecuted by the City of Montgomery, Alabama, and the State of Alabama for acts done under color of authority derived from the Constitution of the United States or any law thereof providing for equal rights to citizens, and for the purpose of determining whether any of the petitioners are being denied, or cannot enforce in the

Charles S. Conley, Montgomery, Ala., Martin M. Berger, New York City, for petitioners.

Matthis W. Piel, City Pros., Montgomery, Ala., for City of Montgomery.

1. "§ *1443.   Civil rights cases*
   "Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:
   "(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;
   "(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law."

courts of the State of Alabama, a right under the laws providing for the equal civil rights of citizens of the United States.[2] By agreement, these cases were consolidated for the purpose of this hearing. The submission is upon the evidence taken orally before the Court and the briefs of the parties.

In criminal case No. 11,740–N, the evidence reflects that the petitioners were arrested at approximately 1 a. m., on April 21, 1965, while sitting in the offices of Dr. Levi Watkins, the President of Alabama State College, a State supported college that is, for all practical purposes, an "all-Negro college." The events that occurred on the college campus leading up to the arrests are significant. On April 20, 1965, there were large demonstrations on the campus of Alabama State College. These demonstrations were for the purpose of some of the students and a good number of "outsiders" expressing their grievances against alleged denial of academic freedom and their desire for better physical facilities for the college. The petitioners picketed around several of the classroom buildings in the early morning, and at approximately noon on April 20, 1965, they and some twenty-five other persons entered Dr. Watkins' offices. Their attempts to obtain an interview with the president of the college without an appointment and in such manner failed; however, the entire group, with the permission of Dr. Watkins and Dr. Watkins' secretary, remained in his offices all day and until about 5:30 p. m., which was the regular building closing time. About 5:30 p. m., on April 20, 1965, one of the college security officers asked the petitioners and the others accompanying them to leave; they refused. Upon

several occasions between 5:30 p. m. on April 20 and 1 a. m. on April 21, they were ordered to leave; upon each occasion they refused. About 1 a. m. on April 21, the superintendent of the buildings and grounds for the college, a Negro who was empowered with the arrest authority of a Montgomery city policeman, threatened all who were present with arrest if they refused to leave. Upon this order, all but the petitioners left; whereupon, several Montgomery city police officers, who had been summoned at the instance of the superintendent, arrested the petitioners for trespassing.[3] It is significant that seven of the thirteen arrested were nonstudents at Alabama State College. The nonstudents arrested were active workers in the Student Nonviolent Coordinating Committee (SNCC) or in the Southern Christian Leadership Conference (SCLC).

In criminal case No. 11,741–N, the evidence reflects that the arrests of the petitioners grew out of two incidents which occurred a day or so after the arrests in Dr. Watkins' offices. These incidents were:

(1) On April 24, 1965, Randolph Glenn, a nonstudent and a "field secretary" for the Congress of Racial Equality, arrived on the campus of Alabama State College during the early evening for the purpose of joining a group of students who were demonstrating against and protesting the arrest and threatened expulsion of other students for their activities. The college at this time was undergoing, and for several days had been undergoing, a considerable amount of turmoil by reason of the "demonstration" activities taking place on the campus. In order to assist in maintaining discipline among the stu-

2. Such procedure, outlined in Rachel, et al. v. State of Georgia, 5th Cir., March, 1965, 342 F.2d 336, is for the purpose of determining whether petitioners are entitled to a federal forum, as provided in 28 U.S.C. § 1443, for the trial of these criminal prosecutions.

3. *The Code of the City of Montgomery, Alabama, 1952,* as amended, Chapter 20. § 47:

"Sec. 47. * * * [T]respassing.

"(a) It shall be unlawful for any person in the city to * * * remain upon the lands, buildings or premises of another, or any part, portion or area thereof, after having been forbidden to do so, either orally or in writing, by the owner, lessee, custodian or other person in possession thereof, his agent or representative * * *."

dents and to keep order on the campus, the college officials had requested the State officials to supply additional security personnel. In response to this request, several Negro policemen were brought from the City of Mobile, Alabama, to perform this function. After Glenn was ordered to leave the college campus and refused, he was arrested by these Negro policemen and charged with violating the City of Montgomery trespass ordinance.

(2) About 3 p. m., on April 25, 1965, Mallisham and McCants, two former students active in the civil rights movement, who had previously been suspended as students at the college, returned to the college campus for the purpose of either organizing or participating in "demonstration" activities; they were ordered to leave by the college officials and the Mobile Negro policemen, and, upon their refusal to leave, they were arrested and charged with trespass.

■ Proceeding first to the petitioners' argument under Subsection (2) of Section 1443, which is predicated on the ground that they were arrested and are being prosecuted for acts done under color of authority derived from federal laws providing for equal rights, it is clear that removal to this Court from the Recorder's Court of the City of Montgomery is not available. New York v. Galamison, 2d Cir., Jan. 26, 1965, 342 F.2d 255, cert. denied 380 U.S. 977, 85 S.Ct. 1342, 14 L.Ed. 272; Peacock et al. v. City of Greenwood, Mississippi, 5th Cir., June 22, 1965, 347 F.2d 679. The evidence in these cases is clear that the acts for which the petitioners were arrested and are being prosecuted were not done in any official or quasi-official capacity derived from any law providing for equal rights. The above-cited cases are clear that when Subsection (2) of Section 1443 speaks of "color of authority derived from" any law providing for equal rights, it is referring to a situation where a beneficiary of that portion of the statute should be allowed to do something and not merely to a situation where one may have a valid defense in a prosecution

for the commission of the act; thus, as the Second Circuit did in Galamison and as the Fifth Circuit did in Peacock, this Court concludes that Subsection (2) of Section 1443 is limited to officers and those assisting them or otherwise acting in an official or quasi-official capacity. None of these petitioners were so acting.

■ In considering the petitioners' contentions under Subsection (1) of Section 1443 to the effect that they have been denied or cannot enforce in the courts of the City of Montgomery and the State of Alabama their rights under the Constitution and laws of the United States providing for the equal civil rights of citizens of the United States, this Court specifically finds and concludes that the City of Montgomery, Alabama, and the State of Alabama, acting through the arresting officers in arresting these petitioners and acting through the court officials in prosecuting these petitioners, were not and are not denying the petitioners any right under any constitutional or statutory provision providing for the equal civil rights of citizens of the United States. No situation is involved in either of the cases now presented such as was involved in Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697. There is nothing involved in either of the cases now presented comparable to the denial of services and the request of removal from places of public accommodation such as was involved in the case of Hamm v. City of Rock Hill, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300. It is clearly demonstrated from the evidence taken upon this submission that the officials of the City of Montgomery and the State of Alabama, by arresting and prosecuting the petitioners in these cases, are not acting under pretense of preserving segregation and are not acting under any pretense for the purpose of harassing and punishing citizens for the exercise of their constitutional rights or federally-protected statutory rights. This Court is aware of and recognizes the validity of the principles of Rachel et al. v. State of Georgia, supra; Peacock v.

City of Greenwood, Mississippi, supra, and Cox v. State of Louisiana, 5th Cir., June 29, 1965, 348 F.2d 750.[4]

█ The petitioners' argument and claim in these cases that they are being denied the equal protection of the law and that the Montgomery ordinance in this instance is being enforced as a part of a policy of racial discrimination maintained by both the City of Montgomery and the State of Alabama is, under the evidence in these cases, without any support. There is no basis for finding or concluding that this ordinance has been invoked or is being invoked discriminatorily to harass and impede these petitioners in their efforts to exercise any constitutional or statutory rights providing for the equal civil rights of citizens of the United States. To the contrary, the evidence in these cases supports the finding that prior to the time any arrests were made, the law enforcement officers of the City of Montgomery made timely and fair requests of these petitioners to cease their illegal conduct. The requests were not based on any policy of racial discrimination. There was and is no attempt on the part of the City of Montgomery authorities, by these arrests and prosecutions, to deny any of these petitioners any right or privilege secured them by the Constitution and laws of the United States. When arrested, the petitioners were engaged in illegal conduct that had, under the circumstances leading up to and surrounding their actual arrests, reached the point of being of an aggravated nature. The "common denominator" of arrest and prosecution for the exercise of civil rights—as stated by Judge Wisdom in speaking for the United States Court of Appeals for the Fifth Circuit in Cox v. State of Louisiana—that existed in Ra-

chel, Peacock and Cox, does not exist in the cases now before this Court.

There is no constitutional or statutory right, as this Court understands the law, that prohibits arrests and prosecutions for conduct such as these petitioners were engaged in prior to and at the time they were arrested. The basic and glaring fallacy in the petitioners' reliance upon Rachel, Peacock and Cox is that such reliance is predicated upon the assumption that the petitioners had a constitutional and statutory right to engage in the conduct for which they were arrested and are being prosecuted. Such is not the case; to the contrary, the conduct of the petitioners was illegal. There is no immunity conferred by our Constitution and laws of the United States to those individuals who practice civil disobedience under the guise of demonstrating or protesting for "civil rights." The philosophy that a person may—if his cause is labeled "civil rights" or "states rights"—determine for himself what laws and court decisions are morally right or wrong and either obey or refuse to obey them according to his own determination, is a philosophy that is foreign to our "rule-of-law" theory of government. The practice of such philosophy is untenable. Those who resort to civil disobedience such as the petitioners were engaged in prior to and at the time they were arrested and then, when arrested and prosecuted, attempt to go to a Federal court with a cry of "civil rights" violation, cannot under the rationale of State of Virginia v. Rives, 100 U.S. 313, 25 L.Ed. 667, Hamm, Rachel, Peacock and Cox, escape arrest and prosecution. Civil disobedience by "civil rights workers" is still a violation of the law and subjects the violators to being prosecuted in the courts of the cities and states when the civil disobedience

4. The principles of these cases were applied in criminal case No. 11,739-N, wherein this Court, on this date, allowed the petitions for removal from the Recorder's Court of the City of Montgomery under Section 1443(1) and declared unconstitutional Montgomery City Ordinance No. 16–64, Section 7, as applied to the conduct of the petitioners in that case, which resulted in their arrests on April 15, 1965. Pursuant to this declaration, it was ordered that the criminal prosecution be dismissed as to the petitioners in that case based upon their arrests by the officials of the City of Montgomery on April 15, 1965.

does not arise out of the exercise of rights or the attempt to exercise rights under the Constitution and the laws of the United States providing for the equal civil rights of citizens of the United States.[5] These petitioners and others so inclined must come to recognize that judicial processes are available for the purpose of protecting their constitutional rights in this district. This does not mean to say that peaceful, orderly and lawful demonstrations (such as were being practiced by the petitioners in criminal case No. 11,739–N, this date dismissed by this Court) for purposes of dramatizing grievances or protesting discrimination can ever justify arrests and prosecutions; however, demonstrations and protests in a disorderly and unpeaceful and unlawful manner are not sanctioned by the law as this Court understands it. In this connection, see Cox v. State of Louisiana, Jan., 1965, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471.

There is a place in our system for citizens, both Negro and white, who wish to protest civil wrongs or present grievances against violations of their rights, to do so provided they act in a peaceful and orderly manner and provided they resort to the courts and not to the streets when they are thwarted in the exercise of this privilege by authorities acting under color of law.

Pursuant to the findings as herein set out, it is now concluded that none of the petitioners were arrested or are being prosecuted by the City of Montgomery, Alabama, or the State of Alabama, for the purpose of denying them or preventing them from enforcing in the courts any of their constitutional or statutory rights for the equal civil rights of the citizens of the United States. It is further concluded that the Montgomery city ordinance as enforced and applied to these petitioners does not violate any of the petitioners' rights as guaranteed by the Constitution or laws of the United States. This Court further concludes that there is no credible evidentiary showing in support of the conclusional allegations that the petitioners cannot enforce in the courts of the City of Montgomery and of the State of Alabama their equal civil rights as citizens of the United States. It follows, therefore, that these cases are not properly removable to this Court under either of the provisions of 28 U.S.C. § 1443 and that the cases should be remanded to the Recorder's Court of the City of Montgomery, Alabama.

In accordance with the foregoing, it is, therefore, the order, judgment and decree of this Court that the motion of the City of Montgomery filed in each of the above-captioned cases, seeking to have each case remanded to the Recorder's Court of the City of Montgomery, Alabama, be and the same is hereby granted.

It is ordered that these cases be and each is hereby remanded to the Recorder's Court of the City of Montgomery, Alabama.

It is further ordered that the costs incurred in these proceedings be and they are hereby taxed against the petitioners, for which execution may issue.

---

5. This Court has an acute awareness of the rights conferred by the Civil Rights Act of 1964 as that Act has been interpreted in Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258, and Katzenbach v. McClung, et al., 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290.