Rollye SMITH

v.

CITY OF MONTGOMERY.

Fannie GRANT

v.

CITY OF MONTGOMERY.

Odessa McCALL

v.

CITY OF MONTGOMERY.

Jessie DOUGLASS

v.

CITY OF MONTGOMERY.

Roosevelt BARNETT

v.

CITY OF MONTGOMERY.

In re Petition to Adjudge a Delinquent Child:

Veronica REYNOLDS et al.

Crim. Nos. 11757N, 11756N, 11758N.

United States District Court
M. D. Alabama, N. D.

Feb. 1, 1966.

Solomon S. Seay, Jr., of Gray & Seay, Montgomery, Ala., for petitioners.

Ira DeMent, Montgomery, Ala., for the City of Montgomery.

JOHNSON, District Judge.

Each of the petitioners in the above-numbered cases was arrested by police officers of the City of Montgomery, Alabama, on a charge of violating Ordinance No. 22–65 of the City of Montgomery, Alabama.[1] In criminal cases Nos. 11,756–N and 11,757–N, the petitioners, after their arrests, were scheduled for trial in the Recorder's Court of the City of Montgomery for violating said ordinance. Petitioners in criminal case No. 11,758–N are juveniles, and upon their arrests were charged in the Family Relations Division of the Circuit Court with being delinquent in that each violated said ordinance. Thereafter, the petitioners in each case removed the prosecutions to this Court pursuant to Title 28, Section 1443, United States Code. Since each of the three cases involves the same questions of law and substantially the same facts, they were consolidated, and, by formal order, set for hearing. The petitioners in each case ask this Court to declare unconstitutional Ordinance No. 22–65 of the City of Montgomery, in that it unduly prohibits the exercise of constitutionally protected rights of free speech and assembly and contains no clearly defined standards for use by the City of Montgomery commissioners in granting or denying an application or permit thereunder. In the alternative, the petitioners in each case ask this Court to declare their arrests and prosecutions unconstitutional by reason of the application of the ordinance to the facts and circumstances surrounding and culminating in their arrests.

For the purpose of determining jurisdiction, this Court, proceeding on the basis of Rachel, et al. v. State of Georgia (5th Cir., March, 1965), 342 F.2d 336, conducted an evidentiary hearing into the matter after, as above stated, giving due notice.

The petitioners, all Negroes, were at the time of their arrests picketing Moore's Grocery Store, a store located in a predominantly Negro section of the City of Montgomery, Alabama; the pickets were carrying signs urging that persons sympathetic with the cause of equal rights withdraw their patronage from this store because of an alleged assault on a female Negro customer by the male white proprietor and because of the alleged refusal of the officials of the City of Montgomery to issue a warrant for the proprietor's arrest. The evidence reflects that there were never over six pickets in the line at any time, that they were in all respects orderly and well spaced, and that no one was prevented from entering or leaving the premises being picketed. There were no crowds; there was no disorder on the part of others and no threats of such disorder. The evidence further reflects that on five occasions individuals who were engaged in conducting a "one-man picket line" were arrested by the city police officers. Except for the petitioners' failure to secure a permit as required by the ordinance, there is no question in this case that they were at all times engaged in the exercise of an allowable and constitutionally recognized right; that is, the right of free speech and assembly to protest what they considered to be racial discrimination on the part of the store involved and on the part of the city officials.

This Court is impressed that Ordinance No. 22–65, adopted by the Board of Commissioners of the City of Montgomery on April 30, 1965, represents a genuine attempt on the part of the City of Montgomery officials to comply with what they consider to be the law of this land as it relates to the right to protest by public assembly, demonstrations and picketing. See Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). The only real issue for decision in this case is whether the City of Montgomery has exceeded or transcended its right to regulate the use of the city streets of Montgomery, Alabama,

---

1. See Appendix A.

and other facilities, for the purpose of assuring the safety and convenience of the citizens of Montgomery in their use of same and thereby has unduly—in a constitutional sense—interfered with the equally important rights of free speech and assembly.

As stated above, the arrests of the petitioners did not directly stem from their effort to protest what they considered to be discriminatory practices on the part of the proprietor of Moore's Grocery Store, or on the part of the city officials of Montgomery in failing or refusing to issue a warrant for the proprietor's arrest and prosecution. On the contrary, the arrests, as the evidence clearly reflects, stemmed solely from their failure and refusal to procure, or attempt to procure, a permit under the ordinance in question after the matter was called to their attention by the city officers. No ordinance of the City of Montgomery subjects petitioners to punishment because of the manner in which they were picketing the store; however, Ordinance No. 22–65 subjects them to punishment because of their willful refusal to make an application to the officials of the City of Montgomery and to secure a permit thereunder prior to the time they engaged in conduct such as they were engaged in at the time of their arrests.

██ This Court recognizes that the authority of a municipality to impose regulations in order to assure the safety and convenience of the people in the use of public highways, sidewalks, and streets has never been regarded as inconsistent with the exercise of civil liberties. Cox v. State of New Hampshire, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049; Chaplinsky v. State of New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031. In many instances, of course, statutes which condition the exercise of basic liberties upon the issuance of a license or permit have been held unconstitutional on their face as imposing substantial burdens upon and deterrents to the exercise of those liberties. Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); Schneider v. State of New Jer-

sey, 308 U.S. 147, 149, 60 S.Ct. 146, 84 L.Ed. 155; Cantwell v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213; Staub v. City of Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302. But this Court, under the facts as presented in these cases, is unwilling and finds it unnecessary at this time to pass on the constitutionality of Ordinance No. 22–65; however, the manner in which each of these petitioners was protesting the alleged discrimination against other members of their race was an allowable and constitutionally recognized exercise of their right of free speech and assembly to protest what they considered to be racial discrimination on the part of the store involved and on the part of the city officials in allegedly failing to issue the warrant for the arrest of the proprietor of the store. If the ordinance of the City of Montgomery which these petitioners were charged with violating (as the City evidently believes) makes the petitioners' conduct punishable in that, as a prerequisite to exercising such right, they failed to apply for and to secure permission from the city officials to exercise their right to engage in such conduct, then the ordinance is unconstitutional as applied to these petitioners. Such an interpretation of the ordinance constitutes a constitutionally impermissible prior restraint on the petitioners' right to engage in the type of conduct the evidence reflects in these cases.

As a prerequisite to engaging in the type of conduct for which these petitioners were arrested, simple notice to the city officials was sufficient. Here the officials had such notice. It is unreasonable in these particular instances to require a formal application and await formal action on the part of the city commissioners.

This Court concludes, therefore, that under Section 1443(1), Title 28, United States Code, the petitions for removal in these cases and the evidence offered in support thereof, adequately reflect that the petitioners suffered a denial of equal rights by the enforcement of Ordinance No. 22–65 as to them. This Court fur-

ther concludes that under the circumstances of these particular cases the arrests of these petitioners and their prosecutions by the City of Montgomery and/or by the Circuit Court of Montgomery County, Alabama, fall squarely within the principles announced by the Supreme Court of the United States in Hamm v. City of Rock Hill, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300 (1964), and Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (Jan. 1965). This ordinance of the City of Montgomery, even though valid on its face, effects a denial of equal rights of these petitioners through its application under the facts of this particular case. The principles of *Hamm, Cox,* Rachel, et al. v. State of Georgia (5th Cir., March 5, 1965), 342 F.2d 336; Peacock v. City of Greenwood, Mississippi (5th Cir., June 22, 1965), 347 F.2d 679; Cox v. State of Louisiana (5th Cir., June 29, 1965), 348 F.2d 750, and Cameron, et al. v. Johnson, et al. (June 1965), 381 U.S. 741, 85 S.Ct. 1751, 14 L.Ed.2d 715, make it necessary and appropriate for this Court to take jurisdiction of this cause and order dismissal of the prosecutions without further proceedings.

In accordance with the foregoing and for good cause, it is the order, judgment and decree of this Court that the petition for removal filed in each of the above-captioned cases be and each is hereby allowed.

It is further ordered that Ordinance No. 22–65 of the City of Montgomery is unconstitutional as applied to the conduct of each of the petitioners in the above-captioned cases that resulted in his or her arrest in the City of Montgomery, Alabama.

It is further ordered that the criminal prosecution of each of the above-named petitioners based upon his or her arrest by the officials of the City of Montgomery, Alabama, be and each is hereby dismissed.

It is further ordered that the costs incurred in this proceeding be and they are hereby taxed against the City of Montgomery, Alabama.

Adopted April 30, 1965

## APPENDIX A

## ORDINANCE NO. 22–65

*BE IT ORDAINED BY THE BOARD OF COMMISSIONERS OF THE CITY OF MONTGOMERY, ALABAMA, as follows:*

*Section 1 — Purpose — The purpose of this Ordinance is to promote the public convenience and to control travel on the sidewalks, streets, highways and other public ways in the City of Montgomery, Alabama, by regulating the time, place, duration and manner of use thereof for public assemblies; to provide for the concomitant right of free speech and assembly; to safeguard practical and effective means whereby citizens may express opinions and enlighten the public on the nature and causes of matters of public concern; to vest appropriate and limited discretion concerning same in the Board of Commissioners of said City; and to provide for punishment for violations of the Ordinance.*

*Section 2 — Amendment — That Section 9–18 of the Traffic Code of the City of Montgomery, Alabama, as amended, be and the same is hereby amended to read as follows:*

*"Section 9–18 (1) — Definitions — In this Ordinance, the following words, terms and phrases shall have the meaning respectively ascribed to them in this Section:*

*a.  Public Assembly* — *A public assembly within the meaning of this Ordinance shall and the same is hereby declared to be any parade, march, formation, procession, picket, group of pickets, picket line, demonstration, movement, assemblage, muster or display of persons, animals, floats, motor-vehicles or combinations thereof on the public sidewalks, streets, highways or other public ways, for the purpose of presenting a cause;  or for the purpose of expressing an opinion to the general public on any particular issue;  or for the purpose of protesting or influencing any state of affairs or decision rendered or to be rendered thereon, whether political, economic or social;  or for the purpose of celebrating, marking or commemorating any past, present, or future event or occurrence, whether historical or otherwise;  notwithstanding that such public assembly may be tranquil and devoid of noise, tumult and quarrelsome demeanor and does not disturb the public peace; and regardless of whether the persons participating and engaging therein march, move about, or patrol, display signs, placards, flags, banners, cards or combinations thereof, or sing, shout, chant, cant, yell or clap their hands;  provided, however, that a funeral procession and service shall not be considered a public assembly.*

*b.  Residential Area* — *The territory contiguous to and including the sidewalk, street, highway or other public way when the property thereon for a distance of 300 feet or more is in the main improved with residences or dwelling houses.*

*c.  Near* — *The word "near" shall mean within sight or hearing.*

*d.  Lewd* — *The word "lewd" shall mean obscene, lustful, indecent, lascivious, lecherous or immoral.*

*e.  Obscene* — *The word "obscene" shall mean that which is offensive to chastity of mind or to modesty, expressing or presenting to the mind or view something that delicacy, purity, and decency forbids to be exposed.  It shall also mean that which is indecent, lewd, licentious, foul, filthy, libidinous and of such character as to deprave and corrupt those whose minds are open to such immoral influences, or calculated, with the ordinary person, to deprave his morals or to lead to impure purposes and tending to excite feelings of an impure or unchaste character stirring the sex impulses and leading to sexually impure and lustful thoughts.*

*f.  Profane* — *The word "profane" shall mean that which is irreverent or contemptuous toward Deity.*

*g.  Libelous* — *The word "libelous" shall mean any false and malicious publication which charges an offense punishable by indictment, or which tends to bring a person into public hatred, contempt, or ridicule or charges an act odious and disgraceful in society.*

*h.  Insulting or Fighting Words* — *The phrase "insulting or fighting words" shall mean those words which by their very utterance inflict injury or tend to incite an immediate breach of the peace by the addressee, including classical fighting words, words in current use less classical but equally likely to cause violence, and other disorderly words, including profanity, obscenity and threats.*

*i.   Epithet — The word "epithet" shall mean any adjective, term, phrase or expression which denotes or connotes a quality or attribute regarded as characteristic of a person.*

*j.   Unlawful Demand, Purpose, End or Objective — The phrase "unlawful demand, purpose, end, or objective" shall mean any such demand, purpose, end, or objective which subverts or tends to subvert any Public Policy of the State of Alabama; provided such Public Policy is constitutional.*

*k.   Church — The word "church" shall mean any building or place of assembly used as a house of worship by any group or congregation of persons of whatever name or calling, whether Jewish, Roman Catholic, Greek Orthodox, Unitarian, Protestant, or other.*

*Section 9–18 (2) — Board of Commissioners to Issue Permit — The Board of Commissioners of said City shall issue a permit in writing to any person, organized group or unincorporated association of persons or to any corporation organized and existing under the laws of the State of Alabama or of any other State, provided such corporation is qualified to do business within the State of Alabama, upon proper application therefor as hereinafter provided, permitting participation and engagement in a public assembly within the City of Montgomery, Alabama, on the terms and conditions and pursuant to the procedure hereinafter declared.*

*Section 9–18 (3) — Form of Application for Permit — Said application shall be directed to the Board of Commissioners of said City in writing and shall be considered and acted upon at any regular or special meeting thereof.*

*a.   Contents of Application — The application for a permit shall contain the following items of information:*

*(1.) The purpose of the public assembly.*

*(2.) The type, nature and character of the public assembly.*

*(3.) The date of the public assembly.*

*(4.) The inclusive times of the public assembly*

*(5.) The probable number of persons, animals, floats and motor-vehicles to participate or engage in the public assembly.*

*(6.) The place, area, locality or route of the public assembly.*

*(7.) A description, including size and wording, of any and all signs, placards, banners, flags or cards to be carried and the names and words of any songs to be sung, chants to be canted or cheers to be yelled.*

*b.   Execution of Application for Permit — The application must be executed in the name of the organized group or unincorporated association of persons or corporation by one having the authority of a general agent thereof.*

*Section 9–18 (4) — Contents of Permit — Said permit for a public assembly shall contain terms and conditions in substantial conformity with the items of information in the application, and the Board of*

*Commissioners shall modify, where possible, any item of information, which, if left unmodified, would necessitate the refusal of a permit under Section 9–18 (8) hereof. No other term or condition shall be placed in the permit except solely for the safety and protection of those engaging or participating in such public assembly or solely for the convenience of public use of the sidewalks, streets, highways or other public ways, and for no other purpose; and it shall be a violation of this Ordinance for any person or persons participating or engaging in such public assembly to disregard or fail or refuse to obey any term or condition in the permit.*

*Section 9–18 (5) — Offenses While Participating or Engaged in, or Observing a Public Assembly — Whoever, while participating or engaged in, or observing a public assembly as defined in and permitted by this Ordinance, addresses any lewd, obscene, profane, libelous, insulting or fighting word or words to another; or, disobeys or disregards any traffic control device, signal or regulation, except when ordered to do so by an Officer of the Department of Police of the City of Montgomery, Alabama; or, utters any abusive epithet towards any person; or, willfully and intentionally disobeys or disregards any lawful order of any Officer of said Department of Police; or, willfully and intentionally urinates or defecates on any sidewalk, street, highway or public way; or, encourages by word or act or both, the commission of any crime or quasi-crime; or, assists, attempts, or participates in cordoning off a sidewalk, street, highway or other public way, or entrance to any building, public or private, allowing no one to pass; or, participates or engages in any illicit sex act; or, willfully and intentionally lies prone or sits upon any sidewalk, street, highway or other public way so as to obstruct, impede, hinder, stifle, retard or restrain passage or traffic thereon; or, assaults, spits on or at or throws any missile at any Officer of said Department of Police; or, fails or refuses to disperse quickly and quietly at the permitted time; shall, upon conviction be fined not more than one hundred dollars or sentenced to imprisonment or hard labor for the City of Montgomery, Alabama, not exceeding six months, or both, in the discretion of the Court.*

*Section 9–18 (6) — Prohibition Against Public Assemblies in Residential Areas — The Board of Commissioners shall refuse to issue a permit for any public assembly in any residential area as herein defined and it shall be a violation of this Ordinance for any person or persons to participate or engage in a public assembly in such area in the City of Montgomery, Alabama.*

*Section 9–18 (7) — Prohibition Against Public Assemblies At or Near Churches — The Board of Commissioners shall refuse to issue a permit for any public assembly at or near any Church as herein defined and it shall be a violation of this Ordinance for any person or persons to participate or engage in a public assembly at or near such Church in the City of Montgomery, Alabama; provided, however, that nothing herein contained shall be construed to prohibit orderly and lawful meetings at such Churches or on such Church grounds, for any of the purposes expressed in Section 9–18 (1) a hereof, or for any other lawful or religious purpose, nor shall anything herein contained prohibit a parade or march from merely passing by, at or near any Church, so long as such Church is not in a residential area as herein defined.*

*Section 9–18 (8) — Conditions on Which Permit is to be Refused —*
*The Board of Commissioners shall refuse to issue a permit for a public*
*assembly when any one or more of the following conditions is apparent*
*from clear and convincing evidence or is evident from the applica-*
*tion itself.*

    *a.  The purpose of the public assembly, whether so stated in the*
*application or not, is the encouragement of the commission of a crime*
*or quasi-crime or is the accomplishment of an unlawful demand, pur-*
*pose, end or objective.*

    *b.  The signs, placards, banners, flags or cards to be carried, or the*
*songs to be sung, or the chants to be chanted, encourage or advocate the*
*commission of a crime or quasi-crime or the accomplishment of an un-*
*lawful demand, purpose, end or objective, contain lewd, obscene, pro-*
*fane, libelous, insulting or fighting words or language or abusive epi-*
*thets; or are to be used in such circumstances or are of such a nature*
*as to create a clear and present danger of riot or rout; but nothing*
*herein contained shall cause words or language merely expressing un-*
*popular views to be so construed.*

    *c.  The proposed public assembly is so large as to prohibit its con-*
*trol and protection by the entire Department of Police of the City of*
*Montgomery, Alabama; or is so large or is such that it will substantial-*
*ly and materially interrupt and interfere with the free flow of com-*
*merce and trade and use of the sidewalks, streets, highways and other*
*public ways in said City for an appreciable period of time.*

    *d.  The proposed public assembly is in an area prohibited by this*
*Ordinance.*

    *e.  The proposed public assembly presents a clear and present*
*danger of destruction of life or property, or serious invasions of rights*
*of privacy or breaches of the peace and that such danger is imminent*
*and aggravated and amounts to more than slight inconvenience or an-*
*noyance.*

*Section 9–18 (9) — Violations of Ordinance — It shall be a violation*
*of this Ordinance to participate or engage in, or to aid, abet, command,*
*counsel or induce any person or persons to participate or engage in a*
*public assembly as herein defined, in the City of Montgomery, Ala-*
*bama, or in the Police Jurisdiction thereof, without there having been*
*obtained prior thereto, a permit for such public assembly.*

*Section 9–18 (10) — Action Upon Public Assembly Becoming Violent*
*— Upon any public assembly becoming violent, the senior ranking Of-*
*ficer of the Department of Police of the City of Montgomery, Alabama,*
*present, shall audibly call a halt to such public assembly and shall order*
*it to forthwith disperse; and it shall be a violation of this Ordinance*
*for any person or persons, who, having been so ordered, willfully and*
*intentionally to fail or refuse to disperse quickly and quietly.*

*Section 9–18 (11) — Presumption of Evidence — Whenever any brick, bottle or other missile is thrown at any Officer of the Department of Police of the City of Montgomery, Alabama, or, at any other person, it shall be presumed that such public assembly has become violent.*

*Section 9–18 (12) — Waiver of Law Prohibited — No Official of the City of Montgomery and no Officer of the Department of Police of said City has or possesses the authority or power to waive any provision of this Ordinance, except as hereinbefore provided.*

*Section 9–18 (13) — Punishment — Whoever violates any provision of this Ordinance, wherein punishment is not provided, shall, upon conviction, be fined not more than one hundred dollars or sentenced to imprisonment or to hard labor for the City of Montgomery, Alabama, not exceeding six months, or both, in the discretion of the Court.*

*Section 9–18 (14) — Administration — The Board of Commissioners shall administer this Ordinance and shall exercise the limited discretion herein conferred, with uniformity of method of treatment upon the facts of each application, free from improper or inappropriate considerations and from unfair discrimination and with a systematic, consistent and just order of treatment, with reference to the convenience of public sidewalks, streets, highways and other public ways in the City of Montgomery, Alabama.*

*Section 9–18 (15) — Provisions Cumulative — The sections, provisions, and violations of this Ordinance are cumulative and in addition to other provisions and violations of other Ordinances or of the Common Law or Statutes of the State of Alabama.*

*Section 9–18 (16) — Severability — The several sections of this Ordinance and the provisions therein are severable. If any section or provision is declared invalid or unconstitutional on its face or in its general or specific application, such declaration shall not affect the validity and the constitutionality of the remaining sections, provisions, or general or specific applications.*

*Section 9–18 (17) — Repealer — All Ordinances or parts of Ordinances in conflict with this Ordinance are hereby repealed.*

*Section 9–18 (18) — Time of Effect — This Ordinance shall take effect as provided by law, after passage, approval, and publication.".*