Willie E. COCHRAN et al., Petitioners,

v.

CITY OF EUFAULA, ALABAMA, Respondent.

Crim. No. 11761–N.

United States District Court
M. D. Alabama, N. D.

March 11, 1966.

Solomon S. Seay, of Gray & Seay, Montgomery, Ala., and Jack Greenberg, Charles H. Jones, Jr., and Charles S. Ralston, New York City, for petitioners.

Ira DeMent, Montgomery, Ala., for respondent.

JOHNSON, District Judge.

The petitioners, 76 in number, seek to remove to this Court criminal prosecutions pending against them in the Recorder's Court, City of Eufaula, Alabama. Removal is sought pursuant to the provisions of 28 U.S.C. § 1443.[1] The petitioners allege that they were arrested and are being prosecuted for acts done pursuant to the First, Fourteenth, and Fifteenth Amendments of the Federal Constitution, as well as 42 U.S.C. §§ 1971 and 1983.

 Upon the receipt of the petitions for removal and upon the filing by the City of Eufaula of motions to remand, this Court, after giving due notice, set the case for a hearing for the purpose of allowing the petitioners an opportunity to offer proof that they were arrested and are being prosecuted by the City of Eufaula for acts done under color of authority derived from the Constitution of the United States or any law thereof providing for equal rights to citizens, and for the purpose of determining whether any of the petitioners are being denied, or cannot enforce in the courts of

---

1. § 1443. Civil rights cases

Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

the State of Alabama a right under the laws providing for the equal civil rights of citizens of the United States or persons subject to the jurisdiction thereof.[2]

The facts leading up to the arrests of the petitioners and the activities being engaged in by the petitioners at the time of their arrests are as follows:

Petitioners, some of whom were members of the Southern Christian Leadership Conference and Southern Community Organization for Political Education, organized demonstrations in the City of Eufaula in order to seek redress of alleged grievances involving the denial of the equal opportunity to register to vote as well as to secure both additional registration days and evening registration.[3] The demonstrations were also designed to stimulate interest among the Negro population in registering to vote.

Application was made to the Mayor of Eufaula for a permit to conduct a demonstration in the city on August 17, 1965. Permission was denied for that day, but was granted for August 18, 1965. The demonstration was conducted under the terms of the permit—on the steps and sidewalk in front of the Barbour County Courthouse in downtown Eufaula—and was at all times peaceful and orderly; there were no arrests. This appears to be the only demonstration during the period in question for which a permit was authorized. However, applications for permits were made for August 19th, 20th and 21st, but no permits were issued for these days.

On August 19, there was a march to the courthouse and demonstration on the courthouse steps. Songs were sung, accompanied by clapping, which, to a considerable extent, disturbed courthouse business. However, there were no incidents and no arrests.

On August 20, a march of approximately 150 occurred and, unlike those which had hitherto been relatively orderly, took place in the streets. Traffic rules were broken and the intersections were blocked, which brought about a temporary halt in vehicular traffic. Again, there were songs and clapping at the courthouse. One of the organizers of the demonstration made a highly inflammatory speech and several derogatory statements to the crowd about the city police. Courthouse business was brought to a halt. The speaker was arrested, along with five or six others, for refusing to disperse after approximately thirty minutes of demonstrating on the courthouse steps.

On August 21, there was another parade and demonstration, this time in a peaceful manner. Again the petitioners were allowed to demonstrate on the courthouse steps. Adequate police protection was afforded. The demonstrators left peacefully when ordered to leave; there were no incidents and no arrests.

On August 23, a permit was applied for and was apparently neither granted nor denied. Nonetheless, approximately 120–125 marched in the city streets to the courthouse. The march was loud and boisterous and generally disorderly. Both vehicular and pedestrian traffic were halted. On the steps of the courthouse, there were again speeches and songs. After nearly an hour, the mayor appeared and requested those assembled to leave. However, his repeated requests were matched with repeated refusals. Finally, after the courthouse business had again been brought to a standstill, the mayor declared an unlawful as-

---

2. This procedure, outlined in Rachel et al. v. State of Georgia, 342 F.2d 336 (5th Cir. 1965); Peacock v. City of Greenwood, 347 F.2d 679 (5th Cir. 1965); Cox v. State of Louisiana, 348 F.2d 750 (5th Cir. 1965), is for the purpose of determining whether petitioners are entitled to a federal forum, as provided for in 28 U. S.C. § 1443, for the dismissal of these criminal prosecutions.

3. Registration procedures are completely controlled by Alabama statutes. See generally Art. III, Title 17, Code of Alabama. Municipalities—and their officials—have nothing to do with registering applicants to vote in Alabama.

sembly.[4] After the demonstrators had been asked whether they wanted to leave or be arrested, approximately ninety to ninety-five percent held their hands up indicating they wanted to be arrested. The mayor again gave them. the opportunity to disperse. Many left, but a substantial number, including the petitioners herein, refused to leave and were arrested under § 412, Title 14, Code of Alabama.[5]

The events of Tuesday, August 24, 1965, closely paralleled those of the previous day. The marchers again blocked traffic and were disorderly, and some of them ran across the grounds of private residences. Songs were sung at the courthouse; there was clapping and stomping, which again brought courthouse business to a halt. Having been requested to leave, and having been given ample opportunity to do so, a number of demonstrators, including petitioners herein, were arrested.

The petitioners now before this Court were arrested either on August 23rd or 24th.

■■ The petitioners' contentions in paragraph five of their petition that Subsection (2) of Section 1443 should be invoked to sustain their removal to this Court will be discussed first. This argument is predicated upon the theory that the petitioners were arrested and are being prosecuted for acts done under "color of authority" derived from federal laws providing for equal rights. The law is clear that removal to a federal forum from a state or city forum under the facts and circumstances as disclosed from the evidence in this case is not available. People of State of New York v. Galamison, 342 F.2d 255 (2d Cir.), cert. denied 380 U.S. 977, 85 S.Ct. 1342, 14 L.Ed.2d 272 (1965) ; Peacock et al. v. City of Greenwood, supra. The evidence in this case reflects that the acts for which these petitioners were arrested and are being prosecuted by the City of Eufaula were not done in "any official or quasi-official capacity derived from any law providing for equal rights." The above-cited cases are clear that when Subsection (2) of Section 1443 speaks of "color of authority derived from any law providing for equal rights," it is referring to a situation where a beneficiary of that portion of the statute should be allowed to do something and not merely to a situation where he may have a valid defense in a prosecution for the commission of the act. Thus, this subsection applies to officers and those assisting them or otherwise acting in an official or quasi-official capacity. People of State of New York v. Galamison, supra; Peacock v. City of Greenwood, supra; cf., Johnson et al. v. City of Montgomery, 245 F.Supp. 25 (D.C.Ala. Aug. 3, 1965). None of these petitioners was so acting.

■ In order to sustain their allegations under § 1443(1), petitioners must prove that their arrests and prosecutions have been and are being carried out with the sole purpose and effect of promoting and bringing about the continuation of conditions and policies of racial discrimination in the Eufaula area of Barbour County by harassing petitioners and punishing them for the exercise of their constitutional rights. The precise issue

---

4. The City of Eufaula has an ordinance adopting the State criminal statutes. An unlawful assembly is defined by § 407, Title 14, Code of Alabama, which provides:
 If two or more persons meet together to commit a breach of the peace, or to do any other unlawful act, each of them shall, on conviction, be punished, at the discretion of the jury, by fine and imprisonment in the county jail, or hard labor for the county, for not more than six months.

5. Section 412 provides:
 Every person who shall remain present at the place of any unlawful assembly, after having been warned to disperse by a magistrate or public officer, unless as a public officer or at the request of any such officer, he is assisting in dispersing the same, or in protecting persons or property, or in arresting offenders, shall be guilty of a misdemeanor.

which the Court must focus on has been formulated as follows:

[I]t is our view, that not every violation of the equal protection clause will justify removal, but only those violations involving discrimination based on race. * * * Appellants also allege deprivation of rights under the due process clause of the Fourteenth Amendment and under the First Amendment as incorporated therein. We hold, however, that the due process clause is not a law providing for *equal* rights within the contemplation of the removal statute.

\* \* \* \* \* \*

The removal statute contemplates those cases that go beyond a mere claim of due process violation; *they must focus on racial discrimination in the context of denial of equal protection of the laws.*[6] (Emphasis added.)

■ The question of whether the petitioners were arrested because some of them were Negroes or because the substance of their demonstrations was to protest social injustices requires this Court to make a firm determination as to those points. This Court has consistently recognized that peaceful demonstrations and protests are the principal means by which Negroes can draw attention to the injustices to which they have been—and still are—subjected, and that they are constitutionally protected from harassment, arrests, and criminal or civil prosecutions by reason of such conduct. But, as indicated, an allegation that their conduct is constitutionally protected does not of itself entitle petitioners to a federal forum. This Court must also recognize the bona fide efforts of the city officials to accommodate the demands of civil rights groups as well as to preserve peace and order in the community on a nondiscriminatory basis.

■■ A finding of discrimination is, of course, a factual determination which depends on a careful weighing and analysis of the facts and circumstances as they are presented in each case. Thus, a finding that an arrest in one case is not motivated by a discriminatory purpose cannot serve as a precedent for future cases.[7] Upon careful consideration of the evidence and testimony presented, this Court concludes that the arrests of these petitioners were not motivated by any discriminatory purpose and were not part of a policy of racial discrimination maintained by the City of Eufaula. Day after day of protests and demonstrations had been allowed and supervised by the public officials which often had resulted in the flouting of local traffic ordinances, requiring the temporary cessation of vehicular and pedestrian traffic. This conduct is clearly illegal, and had the petitioners been arrested for any of these violations, this case could not have been removed. Forman et al. v. City of Montgomery, supra. This Court is mindful, of course, that these petitioners are not before this Court—or any other court—on traffic violation charges, but the tolerance of the officials in this respect is probative of their leniency in allowing petitioners the means and opportunity to express their views. Moreover, only after business had been halted in the

---

6. Peacock v. City of Greenwood, supra, 347 F.2d at 682.

7. Contrast the result this Court reaches in the present case with that reached in Smith et al. v. City of Montgomery, Jan. 1966, 251 F.Supp. 849; Hughley et al. v. City of Opelika, Nov. 1965, 251 F.Supp. 566; Petition to Adjudge a Delinquent Child: Dorothy Jean Wright et al., Aug. 1965, 251 F.Supp. 880; McMeans et al. v. Mayor's Court, Fort Deposit, Alabama,

Sept. 1965, 247 F.Supp. 606; Gibbs et al. v. City of Eufaula, Feb. 25, 1966, Cr. Nos. 11,804–N, 11,805–N, 11,807–N, and 11,808–N on the docket of this Court.

Compare the result reached herein with that reached by this Court in Forman et al. v. City of Montgomery, 245 F.Supp. 17 (M.D.Ala.1965), aff'd per curiam, 355 F.2d 930 (5th Cir. February 17, 1966); Johnson et al. v. City of Montgomery, supra.

courthouse did the mayor declare an unlawful assembly in an obvious effort to restore peace and quiet—not to thwart petitioners in their protest because of their race or the substance of their protest. Thus, this case is distinguishable from Brown v. State of Louisiana, 86 S.Ct. 719 (February 23, 1966 ; Peacock v. City of Greenwood, supra; Cox v. State of Louisiana, supra; and Rachel v. State of Georgia, supra, where, as a result of their actions in advocating civil rights, defendants were prosecuted *for the purpose* of deterring and intimidating them in the exercise of their constitutional and statutory rights in clear violation of the equal protection clause of the Fourteenth Amendment. Under the circumstances of this case, this Court declines to find similar violations.

It should be made clear that this Court, in so holding, finds only that there has been no discriminatory application of the breach of the peace ordinance to these petitioners. This Court does not determine the constitutionality of the statute either on its face [8] or as applied.[9]

In accordance with the foregoing, it is the order, judgment and decree of this Court that this cause be and the same is hereby remanded to the Recorder's Court of the City of Eufaula, Alabama.

It is further ordered that the costs incurred in this proceeding be and they are hereby taxed against the petitioners, for which execution may issue.

---

8. Compare the construction given this statute by the Supreme Court of Alabama in Abernathy v. State, 42 Ala.App. 149, 155 So.2d 586 (1962), with the construction of similar ordinances by state courts in Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); Fields v. South Carolina, 375 U.S. 44, 84 S.Ct. 149, 11 L.Ed.2d 107 (1963); and Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). See Brown v. State of Louisiana, supra; Cantwell v. State of Connecticut, 310 U.S. 296, 308, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). See generally Hague v. CIO, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); Staub v. City of Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); Stromberg v. People of State of California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931); Terminiello v. City of Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949).

9. See Cox v. State of Louisiana, supra; Edwards v. South Carolina, supra; Shuttlesworth v. City of Birmingham, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (November 15, 1965).